2019 IL App (1st) 172859
Nos. 1-17-2859 & 1-18-0185 (cons.)

SECOND DIVISION
April 16, 2019

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF SLOBODAN PAVLOVICH, | ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 14 D 9779 |
| and | ) | |
| | ) | |
| ANETA PAVLOVICH, | ) | The Honorable |
| | ) | Robert W. Johnson, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Lavin concurred in the judgment and opinion.
Justice Hyman concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    In these consolidated appeals, respondent, Aneta Pavlovich, challenges the trial court's grant of her former attorney's motion to withdraw, denial of her motion for an evaluation under section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/604.10(b) (West 2016)), and finding that she was in indirect civil contempt of court. For the reasons that follow, we affirm the trial court's grant of counsel's motion to withdraw and its denial of respondent's motion for a section 604.10(b) evaluation, but reverse the trial court's finding of indirect civil contempt.

¶ 2                                I. BACKGROUND

¶ 3        The parties, both attorneys licensed to practice in Illinois, were married in 2002 and had three children together: S.P., born in 2006, and M.P. and K.P., both born in 2008. In 2014, petitioner filed a petition for dissolution of the parties' marriage, citing as grounds irreconcilable differences.

¶ 4        In November 2016, respondent filed a motion requesting that the trial court appoint an evaluator under section 604.10(b) to evaluate the children's best interests in allocation of parenting time and parental responsibilities. In that motion, respondent contended that on multiple occasions during the litigation of the dissolution proceedings, petitioner had falsely accused her of abusing, neglecting, and mistreating the children and had forced the children to make statements in support of his false allegations. She also alleged that petitioner would threaten her with false reports of abuse in attempts to coerce her into agreeing to his demands in the dissolution litigation. As part of her motion, respondent requested that a mental health evaluation be conducted of both her and petitioner, as well as of all the children. The trial court denied this motion. The trial court's written order did not contain the reasons for its denial, and respondent did not include a transcript of the hearing on the motion in the record on appeal.

¶ 5        In the written order denying respondent's motion for a section 604.10(b) evaluation, the trial court continued the trial on petitioner's dissolution petition to June 12 and 13, 2017. On June 8, 2017, respondent's then-counsel, Hoffenberg & Block, LLC (Hoffenberg), filed a motion to withdraw, citing a breakdown in the attorney-client relationship that made it impossible to continue to represent respondent. The motion also noted that respondent, a licensed attorney, had filed a *pro se* appearance in the case on February 3, 2015, and had never withdrawn that appearance. The certificate of service attached to the motion to withdraw indicated that the

motion was served on respondent by e-mail before 5 p.m. on June 7, 2017. It should be noted that Hoffenberg was the fourth firm that had represented respondent since the institution of the dissolution proceedings (not including respondent's appearance). On the same day that the motion to withdraw was filed, the trial court granted it. The written order granting the motion noted that respondent was present at the hearing. Again, respondent did not include a transcript of this hearing in the record on appeal.

¶ 6        Four days later, on June 12, 2017, respondent's current counsel, James Macchitelli, filed an appearance on respondent's behalf. The same day, the parties proceeded to trial on petitioner's dissolution petition. In addition, an allocation judgment agreed to by the parties was entered by the trial court. Respondent again failed to include a transcript of these proceedings in the record on appeal.

¶ 7        On July 25, 2017, the trial court entered a judgment of dissolution, which it later amended on September 7, 2017. In both the initial judgment and the amended judgment, respondent was awarded a condo owned by the parties. Among other conditions, respondent was required to pay all expenses associated with the condo and to refinance the condo in her name only. Respondent was also prohibited from leasing the condo until she had obtained refinancing. Respondent's postjudgment motions directed against the initial judgment and the amended judgment were all denied.

¶ 8        Shortly after the entry of the amended judgment, petitioner filed a two-count petition for rule to show cause against respondent. The first count alleged that respondent had failed to comply with certain provisions of the allocation judgment relating to the children's attendance at soccer. The second count alleged that respondent had failed to comply with the judgment of dissolution by failing to pay certain expenses associated with the condo awarded to respondent

and by leasing the condo prior to obtaining refinancing. Following a hearing on the petition, the trial court found respondent in indirect civil contempt for leasing the condo in August and September 2017, before she had obtained refinancing. Accordingly, the trial court ordered petitioner to pay $5300.00—the amount respondent collected in rent—to the clerk of the circuit court to purge her contempt.

¶ 9        Respondent filed a motion to reconsider the contempt order, arguing that although the trial court stated that it found her in indirect civil contempt, it actually found her to be in indirect criminal contempt. As a result, respondent argued, she was entitled to certain procedural protections, which she was not afforded. After a hearing on her motion to reconsider, the trial court denied respondent's motion to reconsider with respect to the finding of indirect civil contempt but modified the purge amount such that respondent was required to pay $2650 to petitioner, representing one-half of the rent respondent collected from leasing the condo.[1] The trial court also awarded petitioner $3000 in attorney fees incurred in bringing the petition for rule to show cause.

¶ 10       In appeal No. 1-17-2859, respondent appeals from the initial judgment of dissolution and amended judgment dissolution, while respondent's appeal in appeal No. 1-18-0185 relates to the trial court's finding of indirect civil contempt.

¶ 11                                    II. ANALYSIS

---

[1] We observe that this order was not included in the record on appeal nor is the notice of appeal in appeal No. 1-18-0185. Normally, this would preclude our consideration of these documents. *Babich v. River Oaks Toyota*, 377 Ill. App. 3d 425, 430 (2007). However, the notice of appeal in appeal No. 1-18-0185 was filed with this court by the clerk of the circuit court, per Illinois Supreme Court Rule 303(a)(4) (eff. July 1, 2017), and a copy of the order on respondent's motion to reconsider the finding of indirect civil contempt was attached to that notice of appeal. We find these circumstances sufficient indicators of the authenticity of the notice of appeal and attached order, such that we will consider them. See *People v. Rogers*, 372 Ill. App. 3d 859, 861-62 (2007) (concluding that the notice of appeal transmitted by the circuit court clerk to the reviewing court was sufficient evidence of the timely filing of the notice).

¶ 12 In appeal No. 1-17-2859, respondent argues that the trial court violated Illinois Supreme Court Rule 13 (eff. July 1, 2013) in allowing Hoffenberg to withdraw as her counsel without also continuing the trial and allowing respondent 21 days to obtain new counsel. She also argues in that appeal that the trial court erred in denying her motion for a section 604.10(b) evaluation. In appeal No. 1-19-0185, respondent argues that although the trial court stated that it found her in indirect civil contempt for leasing the condo before obtaining refinancing, it actually held her in indirect criminal contempt, and she was not afforded the procedural protections afforded to litigants subject to criminal contempt. We address each of these in turn.

¶ 13                                         A. Motion to Strike

¶ 14 Before addressing respondent's contentions on appeal, we pause to note that petitioner, in his response brief, requested that we strike portions of respondent's brief and appendices. Petitioner bases this request on the fact that respondent's brief exceeds 50 pages in violation of Illinois Supreme Court Rule 341(b)(1) (eff. May 25, 2018) and contained allegations that were not supported by the record on appeal. Petitioner also points out that some of the documents included in respondent's appendix are not in the record on appeal and the record does not contain any report of proceedings. Petitioner is correct in pointing out these deficiencies in respondent's brief, and we advise appellate counsel for respondent to review the Illinois Supreme Court Rules governing appellate briefs and procedures and make a greater effort to comply with them in future appeals. We do not believe, however, that it is necessary to strike respondent's brief or appendix. To the extent that documents or allegations relied on by respondent are not contained in or supported by the record on appeal, we will disregard them in addressing respondent's contentions on appeal.

¶ 15                                   B. Appeal No. 1-17-2859

¶ 16 Respondent first argues that the trial court violated Rule 13 when it allowed Hoffenberg to withdraw as her counsel because she did not receive reasonable notice of the motion and because the motion was granted within 21 days of trial and without a continuance of trial. In addition, respondent contends that the trial court should have denied the motion to withdraw because it resulted in an inequitable and unconscionable judgment of dissolution. We conclude that respondent has waived these contentions.

¶ 17 At the time Hoffenberg filed its motion to withdraw, Rule 13(c) provided in relevant part:

"(2) *Notice of Withdrawal*. An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw ***. Such notice shall advise said party that to insure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance stating therein an address at which service of notices or other documents may be had upon him.

(3) *Motion to Withdraw*. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable." (Emphases in original.) Ill. S. Ct. R. 13(c) (eff. July 1, 2013).

Courts have interpreted these provisions as requiring a continuance of at least 21 days after the entry of the order granting withdrawal to allow the party to retain counsel or enter his own supplementary appearance. *In re Marriage of Ehgartner-Shachter*, 366 Ill. App. 3d 278, 289

-6-

(2006). During that 21-day period, the trial court is not to render any rulings that would prejudice the party's rights. *Id.* A trial court's failure to grant a continuance to allow for the 21-day period may constitute reversible error. *Id.*

¶ 18    Respondent argues that the trial court should have denied the motion to withdraw because she did not receive reasonable notice of the motion because she was served with the motion less than 24 hours before it was presented to the trial court. Respondent does not, however, make any further legal argument in support of this contention. For example, she does not explain how the notice was unreasonable or how she was prejudiced by the short notice in light of the fact that she appeared at the hearing on the motion. Respondent also has not cited any authority establishing what constitutes reasonable notice under Rule 13 or holding that a failure to comply with the notice provision is reversible error, even when the party appears at the hearing. Because respondent fails to support this contention with legal argument or authority as required by Rule 341(h)(7), we must conclude that she has forfeited it. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of an appellant's brief contain "the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on"); *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 208 (2007) (concluding that the appellant waived his contention by failing to cite pertinent authority in support as required by Rule 341(h)(7)); see also *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 19        Respondent also argues that the trial court violated Rule 13 by granting the motion to withdraw without continuing the trial and affording respondent 21 days in which to obtain new counsel. As mentioned above, courts have held that the spirit of Rule 13 requires that a party be given a 21-day transition period following the withdrawal of their attorney to obtain new counsel or file their own supplementary appearance and that the trial court take no action during that period that might prejudice the party's rights. *In re Marriage of Miller*, 273 Ill. App. 3d 64, 69 (1995). Not all failures to allow for such a 21-day transition period constitute reversible error, however. In determining whether such a failure constitutes a reversible error, courts have considered the particular facts and circumstances surrounding the particular motion to withdraw including whether the party fired the attorney, when the motion to withdraw was filed in relation to upcoming proceedings, whether the party claims they were prejudiced by actions taken within 21 days of the withdrawal, whether the party appeared at the hearing that resulted in the order challenged on appeal, how soon after granting the withdrawal the trial court took allegedly prejudicial action, whether subsequently retained counsel appeared and was ready to proceed at proceedings within 21 days, and whether the party had notice of the intent to withdraw and/or the order granting withdrawal. See, *e.g.*, *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 41 (holding that the trial court did not commit reversible error in denying motion to continue trial and that 21-day transition period under Rule 13 was not required where the party fired counsel on the morning of trial, despite other prior opportunities to do so); *Ehgartner-Shachter*, 366 Ill. App. 3d at 289 (trial court's actions taken within 21 days of granting attorney withdrawal not reversible error where the party did not argue that he was prejudiced by those actions and did not file a motion to reconsider those actions); *In re Robert S.*, 357 Ill. App. 3d 214, 218 (2005) (trial court committed reversible error where it granted the mother's attorney's

motion to withdraw and then immediately conducted a hearing on the State's petition to terminate the mother's parental rights while the mother was not present); *Miller*, 273 Ill. App. 3d at 69 (concluding that any error in trial court's failure to grant 21-day transition period after attorney withdrawal waived because subsequent counsel appeared at the next hearing and answered "ready" instead of requesting continuance); *In re Marriage of Santa Cruz*, 179 Ill. App. 3d 611, 621 (1989) (trial court's failure to allow a 21-day transition period after withdrawal was reversible error where the trial court entered a visitation order just two days after the party received notice of the motion to withdraw, the party did not receive notice that withdrawal had been granted, and the party was not present at the hearing on the visitation issue).

¶ 20 Here, respondent failed to include in the record on appeal transcripts of the hearing on the motion to withdraw or of the trial. As a result, we are unable to review the specific facts and circumstances of the trial court's grant of the motion to withdraw without allowing for a 21-day transition period. Based on the common law record—which is all that respondent provided for our review—all we know is that after notice to respondent, Hoffenberg filed its motion to withdraw four days before trial and the trial court granted the motion the same day. Respondent was present at that hearing. On the first day of trial, respondent had retained new counsel and the parties proceeded with the trial. With only the common law record and no reports of proceedings, we are unable to determine whether respondent ever objected to, agreed to, or even requested Hoffenberg's withdrawal; whether respondent had her new counsel waiting in the wings for Hoffenberg's withdrawal to be granted; whether respondent requested a continuance following Hoffenberg's withdrawal or whether she agreed and/or insisted on proceeding to trial as scheduled; or whether respondent's new counsel answered "ready" for trial or requested that it be continued. In fact, based on the meager record before us, we are unable to determine whether

the trial court offered respondent a continuance and respondent declined the offer or whether the trial court actually, as respondent contends without support, denied her request for a continuance. Because respondent has failed to provide us with a sufficient record on which to determine whether the trial court committed reversible error in this respect, we must assume that the trial court's action acted in conformance with the law. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 21    We also note that at the time that Hoffenberg filed its motion to withdraw, respondent still had on file the *pro se* appearance that she had filed in February. Respondent argues that her appearance has no relevance because, although she is a licensed attorney, she has no family law experience. While this may be true (we have no way of knowing the depth or type of respondent's legal experience), it should be noted that Rule 13, as interpreted by other appellate courts, allows a party 21 days to *either* retain new counsel *or* file a supplementary appearance on his or her own behalf. Here, respondent already had her own, supplementary appearance on file, which raises the question of whether she was still entitled to the 21-day continuance. None of the cases cited by respondent address this issue, but we need not resolve it any case, because, as discussed above, respondent waived any error with respect to the trial court's grant of Hoffenberg's motion to withdraw.

¶ 22    Respondent also argues that the trial court should have denied Hoffenberg's motion to withdraw because it resulted in an inequitable and unconscionable judgment of dissolution. More

specifically, respondent contends that she was forced to go to trial with an attorney who had only one day to prepare and did not have the opportunity to subpoena witnesses or present medical bills. As a result, respondent contends, the trial court refused to acknowledge her outstanding medical bills, awarded petitioner a disproportionate share of the equity in the marital real estate, ignored respondent's testimony regarding her contribution of nonmarital funds to the purchase of marital real estate, erroneously accepted petitioner's self-serving testimony regarding an outstanding loan, disregarded evidence that petitioner dissipated marital funds, failed to credit evidence regarding petitioner's use of and failure to repay credit cards, and erroneously credited petitioner's testimony regarding the value of his law firm. According to respondent, all of this led to an inequitable judgment of dissolution and amended judgment of dissolution.

¶ 23        As discussed above, respondent did not include a transcript of the trial proceedings in the record on appeal. As a result, we are completely unable to assess the veracity of any of respondent's allegations regarding the evidence that was presented to the trial court and whether the trial court properly considered or rejected it. In addition, without the ability to review the evidence and testimony presented to the trial court, we have no way to assess whether the trial court's ultimate division of the marital property was just or equitable. Accordingly, because we lack a sufficient record to review respondent's contention in this respect, we must conclude that that the trial court did not err in granting the motion to withdraw. See *id.* ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 24   Respondent next argues that the trial court erred in denying her motion for a section 604.10(b) evaluation. According to respondent, petitioner failed to participate in the dissolution proceedings in good faith and attempted to alienate the children from respondent by encouraging them to develop negative feelings towards respondent. In support, respondent cites to her allegations of misconduct by petitioner in her motion for a section 604.10(b) evaluation, an e-mail drafted by the guardian *ad litem* on the case, and letters sent to the trial court by the children. Despite referring to the allegations in her motion, the e-mail to the guardian *ad litem*, and the children's letters as "evidence," the allegations are nothing but allegations with no substantiation in the record on appeal, and the e-mail and letters are not included in the record on appeal. Again, because respondent failed to include any reports of proceedings in the record on appeal—including a transcript of the hearing on her motion for section 604.10(b) evaluation— we have no way of determining whether respondent presented this or any other "evidence" to the trial court in support of her motion.

¶ 25   More importantly, however, is respondent's failure to make any argument regarding how this "evidence" relates to the trial court's determination of whether to order an evaluation under section 604.10(b). In fact, respondent does not discuss the method by which the trial court was to make the determination of whether to order a section 604.10(b) evaluation, cite any authority relating to section 604.10(b) evaluations, identify in what respect the trial court erred in denying her motion, or otherwise provide a basis on which we may reverse. Instead, respondent merely argues that, based on her unsubstantiated allegations and nonrecord e-mails and letters, the trial court failed to protect the children's best interests by denying her motion for a section 604.10(b). Given respondent's lack of legal argument and failure to cite relevant authorities, we conclude that respondent has waived this contention. See *Lowrey*, 375 Ill. App. 3d at 208; *Thrall*, 145 Ill.

App. 3d at 719. Moreover, even if she had not waived this contention, her failure to provide a sufficient record for review prevents us from finding any error in the trial court's denial of respondent's motion. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 26                              C. Appeal No. 1-18-0185

¶ 27        In her second appeal, respondent argues that the contempt finding against her must be reversed, because although the trial court claimed to find her in indirect civil contempt, it actually found her in indirect criminal contempt but did not afford her the procedural protections required when finding a litigant in criminal contempt. We agree.

¶ 28        The distinction between civil and criminal contempt is well established in Illinois case law. Generally, "[c]riminal contempt punishes a contemnor for violating a court order, while civil contempt coerces the contemnor to comply with a court order." *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 822 (1992). Thus, we must consider the purpose for which the trial court imposed the contempt sanctions. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. In determining whether to vacate a contempt finding, we must consider the individual facts of this specific case. *Id.* ¶ 25. Our standard of review on the trial court's decision to find the respondent in contempt is whether the trial court abused its discretion. *Id.*

¶ 29        With respect to civil contempt, because it is intended to compel the contemnor to comply with the underlying court order in the future, the contemnor must be able to avoid or purge himself by complying with the terms of the underlying court order. *Id.* ¶ 26. Once the contemnor complies with the underlying order, the sanctions must cease. *Helm v. Thomas*, 362 Ill. App. 3d 331, 334 (2005). Where the underlying order cannot be complied with, there can be no finding of civil contempt. *O'Malley*, 2016 IL App (1st) 151118, ¶ 26. In other words, civil contempt exists where (1) the contemnor has the ability to comply with the underlying court order, and (2) so

long as the contemnor complies with the underlying order, no further sanctions are imposed. *Id.* ¶ 27.

¶ 30    Unlike civil contempt sanctions, criminal contempt sanctions are not intended to compel future compliance with the underlying order but, instead, are retrospective in that they are intended to punish the contemnor for past conduct that cannot be undone. *Id.* "[C]riminal contempt consists of punishing for doing what has been prohibited or not doing what has been ordered ***." *Id.* Unlike a contemnor in civil contempt who may relieve themselves of punishment through compliance with the underlying order, a contemnor in criminal contempt is punished without the possibility of relieving themselves of the contempt or punishment. *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 111 (1999).

¶ 31    Where a litigant is charged with criminal contempt, he or she is entitled to constitutional protections and procedural rights similar to those afforded to a criminal defendant. *O'Malley*, 2016 IL App (1st) 151118, ¶ 31. Those protections and rights include (1) the right to a jury trial when incarceration exceeds six months or the fine exceeds $500; (2) the right to counsel; (3) the right to a change of judge; (4) the right to be charged with a written complaint, petition, or information; (5) the right to personal service and to know the nature of the charges; (6) the right to file an answer and have a public trial; (7) the right to present evidence, subpoena witnesses, and to confront and cross-examine witnesses; (8) the right to be presumed innocent and against self-incrimination; (9) the right to be proven guilty beyond a reasonable doubt; and (10) the right to be admonished as to his constitutional rights. *Id.* The failure to provide a contemnor subject to criminal contempt these protections and rights is grounds to vacate the contempt finding. *Id.*

¶ 32    Here, the contempt order stated that respondent had failed to comply with the judgment of dissolution by leasing the condo for $2650 per month during the months of August and

September 2017, before she had obtained refinancing. Therefore, the trial court ordered respondent to pay the $5300 she had collected in rent to the clerk of the circuit court by December 18, 2017, in order to purge her contempt. Respondent argues that this was a criminal contempt finding because it sought to punish her for her past conduct of leasing the condo in August and September, a violation of the judgment of dissolution that could not be undone. Petitioner disagrees and contends that the order was intended to compel petitioner to refrain from leasing the condo in the future. Petitioner also argues that because respondent failed to include a transcript of the hearing on his petition for rule to show cause in the record on appeal, we lack a sufficient record to determine the trial court's intent in imposing the sanctions.

¶ 33        We agree with respondent. Although the record on appeal does lack a transcript of the contempt hearing, the common law record is sufficient to conclude that the trial court actually found respondent in indirect criminal contempt, not indirect civil contempt, even though the trial court called it indirect civil contempt.

¶ 34        The trial court's written contempt order makes clear that notwithstanding its own characterization as indirect civil contempt, the court intended to punish respondent for the act of leasing the condo for two months without a court order changing the terms of the dissolution judgment. Respondent was not at liberty to change the terms of the dissolution judgment unilaterally. If respondent wanted to lease the condo, the trial court needed to change the order first. That did not happen. The act that was contemptuous was the leasing of the condo in contravention of a direct order from the trial court. The fact that rent was paid for the lease only proved that it was, in fact, leased. First, the respondent clearly violated the court's order not to lease the condo; that was the contempt. See *Shillitani v. United States*, 384 U.S. 364, 368 (1966) (noting that a distinction between civil and criminal contempt is that civil contempt involves a

-15-

failure or refusal to do what the court ordered, while criminal contempt involves doing what the trial court prohibited). Second, it was outside the presence of the court; that made the contempt indirect. See *Windy City Limousine Co. v. Milazzo*, 2018 IL App (1st) 162827, ¶ 40 (indirect contempt takes place outside the presence of the court, while direct contempt takes place in the presence of the court). Third, the trial court sought to punish the respondent for an act that could not be undone, that is, an act that was already in the past and could not be corrected; that made it criminal contempt. See *O'Malley*, 2016 IL App (1st) 151118, ¶ 27 (criminal contempt punishes for past acts that cannot be undone).

¶ 35     We also observe that there is no indication in the trial court's order that the trial court sought to compel future compliance by respondent. The trial court's order provided no method by which respondent could purge herself of contempt by refraining from leasing the condo in the future, which is the very hallmark of civil contempt. See *id.* ¶ 26 ("A person held in civil contempt must have the ability to purge the contempt by complying with the court order."). In fact, the only way that respondent could purge herself of contempt was to pay the money ordered by the trial court. See *Pancotto*, 304 Ill. App. 3d at 111 ("Where the contemnor is being punished without the possibility of relief from punishment, the finding is one of criminal contempt."). Even if respondent were to comply with the condo provisions of the judgment of dissolution going forward, she would still be in contempt until she paid the money ordered by the trial court, essentially making it a fine for her past violations. See *O'Malley*, 2016 IL App (1st) 151118, ¶ 27 ("[C]riminal contempt consists of punishing for doing what has been prohibited or not doing what has been ordered ***."). Taken together, all of these factors—respondent violated an order by performing a prohibited act, respondent's violation took place outside the presence of the trial court, respondent's past violation could not be undone, and respondent could only purge herself

of contempt by paying the fine and not through compliance—all point to the conclusion that the trial court held her in indirect criminal contempt. See, *e.g.*, *Carpel*, 232 Ill. App. 3d at 823 (concluding that the trial court found the wife in indirect criminal contempt for failing to place the parties' child on the plane to see the husband on the date ordered on two occasions in the past because "the court did not condition the penalty on anything she might do in the future (such as putting [the child] on the plane on time for future visitations), but rather imposed the fine for what she had *already* done" (emphasis in original)). Based on this, we must conclude that despite calling it indirect civil contempt, the trial court actually found respondent in indirect criminal contempt.

¶ 36        Because she was found in indirect criminal contempt, the trial court erred when it did not provide respondent the proper procedural safeguards to which she was entitled. Specifically, respondent did not receive notice that she could be subject to criminal penalties, rather than just civil ones. Petitioner filed a "Petition for Rule to Show Cause," asking that respondent be held in "indirect civil contempt" for her failure to comply with the condo provisions of the judgment of dissolution. This is insufficient to place respondent on notice that she is subject to criminal penalties, as criminal contempt proceedings must begin with a "petition to adjudicate criminal contempt," not a "petition for rule to show cause." See *id.* at 823-24 (wife did not receive procedural protections required in criminal contempt proceedings where husband filed a "petition for rule to show cause"); see also *In re Marriage of Alltop*, 203 Ill. App. 3d 606, 616 (1990) ("[D]ue process requires that before criminal sanctions may be imposed upon a respondent as a result of indirect criminal contempt proceedings, notice must be provided to the alleged contemnor that such sanctions are being sought and might be imposed. This requirement can be met by entitling the initial pleading, 'petition for adjudication of criminal contempt.' We

hold that a pleading entitled 'petition for rule to show cause' is not sufficient to provide the due process to which an alleged criminal contemnor is entitled."). Accordingly, the trial court's contempt finding and sanctions must be reversed. See *Carpel*, 232 Ill. App. 3d at 824 (vacating the trial court's contempt finding and sanctions where the wife was held in indirect criminal contempt but not afforded the required protections).

¶ 37   We note that respondent also argues that she was not afforded these safeguards and protections in that she did not receive notice that she was subject to criminal contempt, she was not admonished of her constitutional rights, and she was not found guilty beyond a reasonable doubt. Because respondent did not include a transcript of the contempt hearing in the record on appeal, we have no way of determining whether the trial court admonished respondent or made a finding of guilt beyond a reasonable doubt. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 38   Then the trial court further confused the issue with its second order, which provided for a nonexistent method to purge the contempt by paying $2650 to the petitioner. When civil contempt—which the trial court believed it was finding—results in a fine, that fine must be paid to the clerk of the court. See *Keuper v. Beechen, Dill & Sperling Builders, Inc.*, 301 Ill. App. 3d 667, 669-70 (1998) (noting that "it is well established that civil contempt is an affront to the authority of the court and not a private remedy, that any fine imposed pursuant to the contempt is payable to the public treasury and not a plaintiff, and that a plaintiff may not recover compensatory damages in a civil contempt proceeding" and holding that the trial court lacked authority to award the plaintiffs compensatory damages for defendant's contempt in violating the terms of the settlement agreement). The trial court's attempt to provide restitution to petitioner with the $2650 was improper.

¶ 39    Because we conclude that the trial court's contempt finding and sanctions must be reversed, we must also reverse the trial court's award of attorney fees to petitioner incurred in bringing the petition for rule to show cause. See *SKS & Associates, Inc. v. Dart*, 2012 IL App (1st) 103504, ¶ 28 (reversing award of attorney fees incurred in bringing petition for rule to show cause where contempt finding was reversed).

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing we reasons, the judgment of the circuit court of Cook County is affirmed in appeal No. 1-17-2859, and the judgment of the circuit court of Cook County is reversed in appeal No. 1-18-0185.

¶ 42    No. 1-17-2859, Affirmed.

¶ 43    No. 1-18-0185, Reversed.

¶ 44    JUSTICE HYMAN, concurring in part and dissenting in part:

¶ 45    I concur with the majority's decision to affirm the trial court's grant of counsel's motion to withdraw and its denial of Aneta Pavlovich's motion for a section 604.10(b) evaluation. But, I disagree with the majority's conclusion that the trial court's contempt finding was criminal rather than civil in nature. The contempt finding was intended to coerce Aneta to terminate the lease on the condominium, as required by the terms of judgment of dissolution. That Aneta also was required to pay Slobodan half of the rent she received during the period she improperly rented the condominium does not convert the indirect civil contempt into criminal contempt. Thus, I respectfully dissent.

¶ 46                        Civil Contempt Versus Criminal Contempt

¶ 47    To determine whether contempt is civil or criminal, we consider why the sanction was imposed. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. Civil contempt involves

sanctions with the main purpose to coerce future conduct, and the person held in civil contempt must have the ability to purge the contempt by complying with the court order. *Id.* That is, the civil contemnor must be provided with the opportunity to purge himself or herself of contempt by complying with the pertinent court order. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 44 (1990). Contempt based on past actions that cannot be undone constitutes criminal contempt. *O'Malley*, 2016 IL App (1st) 151118, ¶¶ 26-27.

¶ 48 The majority finds the trial court's indirect civil contempt order was actually indirect criminal contempt because the court intended to punish her for leasing the condominium for two months when the judgment for dissolution required her to wait until she had secured refinancing. (That provision ensured Slobodan, who was still on the condominium title, did not incur legal liability to a tenant.) The majority concludes the trial court was not seeking to compel Aneta's future compliance and that she could purge herself of the contempt only by paying a fine, not by refraining from leasing the condominium in the future.

¶ 49 I disagree. The trial court initially ordered Aneta to pay $5300, the amount she collected for two months rent, to the clerk of the court. The trial court never enforced that order. Instead, after a hearing on Aneta's motion to reconsider, the trial court issued a new order, which is the controlling order, and the only order we need consider. The second order reduced the amount Aneta owed by half and, rather than paying the clerk of the court, the trial court ordered her to pay $2650 directly to Slobodan. With that second order, the trial court was not punishing Aneta or imposing a fine on her. The court allowed Aneta to keep one-half of the rent she had improperly collected, thereby dividing the proceeds of the rent equally between Aneta and Slobodan, who was still on the title. Moreover, paying Slobodan his share of the rent does not

purge the contempt; Aneta can purge the contempt simply by not leasing the condominium until she refinances it.

¶ 50     Aneta relies on *O'Malley*, 2016 IL App (1st) 151118, and the majority cites *O'Malley*. But *O'Malley* is factually distinct. In *O'Malley*, the marital settlement agreement allowed the husband to maintain exclusive possession of the marital residence, which was owned by both parties, until he either bought out the wife's interest or sold it and gave half of the proceeds to the wife. *Id.* ¶ 3. The husband was required to put the house up for sale by a specific date. *Id.* The husband dragged his feet on making repairs, which delayed the house going on the market. *Id.* ¶ 6. A buyer eventually made an offer of $1.875 million. *Id.* The wife signed the contract, but the husband instead made a counteroffer. As a result, the sale fell through. *Id.* The house eventually sold for $1.5 million. *Id.* ¶ 9.

¶ 51     After the house sold, the trial court, on the wife's petition, held the husband in indirect civil contempt and ordered him to pay an amount equal to half of the $1.875 million offer. *Id.* ¶ 18. The appellate court reversed, finding that the husband could not comply with the contempt order or any orders requiring him to comply because he could not put the house back on the market after it was sold to someone else. *Id.* ¶ 29. Because the purge provision could not provide the husband with the opportunity to comply once the house was sold, the appellate court found the trial court's order was criminal rather than civil contempt. *Id.*

¶ 52     Here, the marital dissolution judgment required that Aneta not rent the condominium until she had refinanced it. She violated this directive by renting the condominium for two months, and she may have continued to do so if the trial court had not held her in indirect civil contempt. The trial court's contempt order was intended to ensure that she not lease the condominium going forward. And, unlike the husband in *O'Malley*, who could not comply once

the house was sold, Aneta still owned the condominium and could comply by not renting it to anyone until she had refinanced it. Accordingly, I would affirm the trial court's indirect civil contempt order.