**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210132-U

Order filed April 26, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| JAVIER E. ARROYO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Petitioner-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| KELLI A. BONSTANCHE, MEAGAN | ) | Appeal No. 3-21-0132 |
| SEXTON and JESSICA JENKINS, | ) | Circuit Nos. 20-F-310, 20-F-360, |
| | ) | & 20-F-361 |
| Respondents | ) | |
| | ) | |
| (Meagan Sexton and Jessica Jenkins, | ) | |
| | ) | Honorable Cory D. Lund, |
| Respondents-Appellees). | ) | Judge, Presiding. |

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's finding of contempt was an abuse of discretion where the underlying orders were improper.

¶ 2    Following the entry of a judgment of paternity in favor of Javier Arroyo concerning two minor children, Jessica Jenkins and Meagan Sexton, both nonbiological parents, effectuated filings to determine their own parentage of these children. They also sought to vacate the order

establishing Arroyo's paternity and to dismiss Arroyo's parentage action. Over a period of approximately seven months, without conducting any evidentiary hearings, several temporary orders were entered by the court awarding Jenkins and Sexton parenting time. Arroyo willfully failed to comply with these orders and was held in civil contempt. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4        Kelli Bonstanche was the natural mother of the two minor children who are the subject of this case. On May 24, 2020, Bonstanche passed away unexpectedly. Following Bonstanche's passing, on July 2, 2020, Javier Arroyo instituted paternity proceedings by filing a petition to determine parentage and for other relief, pursuant to the provisions of the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/101 *et seq*. (West 2020)) and the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 *et seq*. (West 2020)). In his petition, in which he named the deceased Bonstanche as the respondent, Arroyo claimed to be the undisputed natural father of Bonstanche's two children. Arroyo requested that the court declare his father/child relationship with the children and award him a primary parent designation, decision-making abilities, and primary residential parenting time.

¶ 5        On July 8, 2020, Arroyo filed an emergency motion for temporary relief, requesting substantially similar relief as prayed for in his petition to determine parentage. In his emergency motion, Arroyo explained that because he and Bonstanche "were able to work things out amongst themselves," he did not possess any legal paperwork regarding his parentage of the children. On July 23, 2020, the circuit court entered a judgment of paternity in Arroyo's favor.

2

Over the objection of counsel for the maternal grandparents, the court's order provided that Arroyo would continue "to have primary residency of both minor children."[1]

¶ 6    According to Arroyo's brief, on July 31, 2020, Jenkins and Sexton filed petitions to determine parentage of the same two children in Will County case Nos. 20-F-360 and 20-F-361.[2] These cases were consolidated with Arroyo's paternity action. On August 6, 2020, Jenkins and Sexton filed an emergency motion to vacate the court's July 23, 2020, order, establishing Arroyo's parentage and dismissing Arroyo's action pursuant to section 2-619 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619 (West 2020). The emergency motion to vacate and/or dismiss alleged Arroyo failed to provide any party with notice of his parentage action, including the decedent's estate, and stated that the children had never lived with Arroyo. Jenkins and Sexton alleged they were presumed parents of the children pursuant to section 204(a) of the Parentage Act because they had a substantially similar legal relationship with Bonstanche when each child was born. 750 ILCS 46/204(a) *et seq*. (West 2020) For this reason, Jenkins and Sexton argued they were entitled to notice of Arroyo's parentage action. 750 ILCS 46/605(a) (West 2020).

¶ 7    The emergency motion to vacate and/or dismiss was before the trial court on August 7, 2020. At that court appearance, counsel for Arroyo challenged Jenkins and Sexton's standing to participate in the proceedings. Counsel asserted that Jenkins and Sexton were Bonstanche's former girlfriends and argued that Jenkins and Sexton were neither parents, nor presumed parents

---

[1]According to Arroyo's brief, the circuit court entered an order of temporary possession of the children on behalf of Arroyo on July 16, 2020. However, this order is not included in the record on appeal. The record is also devoid of a transcript from the July 23, 2020, hearing. Arroyo's brief further alleges that the maternal grandparents filed and presented an emergency petition for guardianship of the minor children on July 23, 2020. This filing is not included in the record.

[2]These petitions are not included in the record before this court.

3

of the children. The court, without receiving testimony, stated, "I am going to give them standing because I think we need to get to the merits of the issue." The court stated:

> "The policy is for kids to be stable in a home and raised along with seeing whoever is in their social circle or family, and it can be an extended family. I want to get it right. I don't want to rely upon a technicality to stop somebody that may be as close as a stepparent, I don't know yet, but I don't want to rely upon a technicality to avoid that. These are kids who have a life and are comfortable or were comfortable until their mom's death. I would like to keep them as comfortable as possible.

> I have to stay within the framework of the law but if a public policy or a personal policy for the children comes into play, then we're talking maybe we will push the envelope a little bit. I don't know yet. But what I do know is best interest of the children is what the Supreme Court keeps telling me I should focus on."

Noting that Jenkins and Sexton's standing may be revoked on a later date, and without receiving any evidence, the court entered an order granting Jenkins and Sexton standing to proceed and allocating them temporary parenting time.

¶ 8       Thereafter, Arroyo filed a motion to dismiss Jenkins and Sexton's emergency motion to vacate and/or dismiss pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 2020). Arroyo again asserted that Jenkins and Sexton lacked standing to participate in the proceedings and requested a dismissal of their filings. On October 5, 2020, the circuit court denied Arroyo's motion to dismiss, seemingly after having only considered the face of the motion and without considering arguments of counsel, conducting an evidentiary hearing or receiving testimony. When questioned by counsel for Arroyo as to whether the court's ruling encompassed Jenkins and Sexton's standing, the court replied, "I don't think I need to rule on that." The court

conceded during the hearing that it "[didn't] know anything about [Sexton]" at this point and that the court's attitude might change once it received information from the guardian *ad litem* (GAL). Thus, the court appointed a GAL to investigate the case and make recommendations pertaining to the children's best interests. The court also modified the temporary parenting time order that was currently in place and granted further temporary parenting time to Jenkins and Sexton, again, without taking any evidence on the issue of standing or on the best interests of the children.

¶ 9  In the months that followed, the court entered several orders modifying the temporary parenting time of Jenkins and Sexton, over Arroyo's objections, and without conducting evidentiary hearings. For instance, on February 11, 2021, the court entered a written order which provided, among other things, that:

> "Over objection of counsel for [Arroyo], and without an evidentiary hearing, Court hereby modifies temporary parenting time for [Sexton] with the minor child *** it shall be modified to the second, third, and fourth weekend of every month from Thursday at 5:00 p.m. to Monday at 2:00 p.m. beginning on Thursday, February 18, 2021 until further order of the court."

The record reflects that a court reporter was present in the courtroom on February 11, 2021, however, no transcript of the proceeding exists.

¶ 10  On February 18, 2021, Arroyo filed a motion for the entry of a "friendly contempt" finding. Arroyo disagreed with the court's refusal to address the threshold issue of Jenkins and Sexton's standing to participate in the proceeding and asserted that he could not, in good conscience, comply with the court's current order awarding Jenkins and Sexton temporary

5

parenting time. Arroyo requested that he be held in friendly contempt, with sanctions in the amount of $50.

¶ 11        On March 11, 2021, the court found Arroyo in indirect civil contempt of court for failing to comply with the court's October 5, 2020, and February 11, 2021, orders, allocating temporary parenting time to Jenkins and Sexton. The court sanctioned Arroyo in the amount of $50 per day, which was stayed pending appeal. This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, Arroyo asserts that the circuit court erred when it entered orders granting temporary parenting time to nonparents, without first addressing the threshold inquiry of Jenkins and Sexton's standing to participate and obtain relief. Arroyo argues that because the court lacked statutory authority to enter the temporary parenting time orders at issue, he could not be held in civil contempt for failing to comply with those orders. Arroyo asserts that "[n]o evidentiary hearing has ever been held in this matter and all of the facts relied upon by the court have been imparted through argument of counsel or report of the GAL." Despite these evidentiary deficiencies, Arroyo asks this court to construe the rights of Jenkins and Sexton under the provisions of the Parentage and Dissolution Acts. To further complicate matters, Jenkins and Sexton have not submitted a brief for our review

¶ 14        Generally, when a reviewing court receives only one brief on appeal, the court is neither compelled to serve as an advocate for the appellee nor required to search the record for the purpose of sustaining the trial court. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). However, in such cases, reviewing courts may: (1) advocate for the appellee by searching the record for the purpose of sustaining the judgment of the circuit

6

court; (2) decide the merits of the appeal if the record and claimed error/errors are simple; or (3) reverse the judgment where appellant's brief demonstrates *prima facie* reversible error. *Id*.

¶ 15    Turning to the issue on appeal, civil contempt is a sanction designed to compel future compliance with a court order. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007). Thus, the existence of a court order, and proof of willful disobedience of that order, is essential to any finding of indirect civil contempt. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 41 (2010). Civil contempt exists where "(1) the contemnor has the ability to comply with the underlying court order, and (2) so long as the contemnor complies with the underlying order, no further sanctions are imposed." *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 29. Where an underlying order cannot be complied with, there can be no finding of civil contempt. *Id*. As such, our task requires review of the underlying orders, the compliance of which the civil contempt order is designed to coerce. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). Contempt appeals are reviewed based on an abuse of discretion standard. *In re Marriage of O'Malley ex rel. Godfrey*, 2016 IL App (1st) 151118, ¶ 25. A court abuses its discretion where no reasonable person would take the view adopted by the court. *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 848 (2010).

¶ 16    Arroyo was found in contempt of court for his failure to comply with the temporary orders entered on October 5, 2020, and February 11, 2021, in which Jenkins and Sexton were awarded temporary parenting time. At issue in this case is the propriety of entering those orders without first conducting an evidentiary hearing. In fact, the court has received no testimony, from any party, at any juncture of these proceedings. The trial court's failure to conduct an evidentiary hearing to ascertain, at minimum, who Jenkins and Sexton were and what relationship they did or did not have with the minor children, is dispositive here.

¶ 17    Section 201(a) of the Parentage Act states that a parent-child relationship may be established between a woman and a child through an adjudication of the woman's parentage or an unrebutted presumption of the woman's parentage pursuant to section 204 of the Parentage Act. Section 204(a)(1) instructs that a person is presumed to be the parent of a child if "the person and the mother of the child have entered into a marriage, civil union, or substantially similar legal relationship, and the child is born to the mother during the marriage, civil union, or substantially similar legal relationship." 750 ILCS 46/204(a)(1) (West 2020). Thereafter, section 501(a) provides that: "On a motion by a party and a showing of clear and convincing evidence of parentage, the court shall issue a temporary order for support of a child *** if the order is appropriate and the individual ordered to pay support is:

(1) a presumed parent of the child;

(2) petitioning to have parentage adjudicated;

(3) identified as the father through genetic testing under Article 4 of this Act;

(4) an alleged father who has declined to submit to genetic testing;

(5) shown by clear and convincing evidence to be the child's father;

(6) the mother of the child; or

(7) anyone else determined to be the child's parent." *Id.* § 501(a) *et seq.* (West 2020).[3]

Section 501(b) goes on to provide that "[a] temporary order may include provisions for the allocation of parental responsibilities and parenting time as provided by the [Dissolution Act]." *Id.* § 501(b).

---

[3]We note that the procedures, actions, and remedies provided under the Parentage Act are available in addition to those other actions and remedies provided for in the Dissolution Act. 750 ILCS 46/906 (West 2020).

¶ 18          Section 603.5(a) of the Dissolution Act provides that:

> "A court may order a temporary allocation of parental responsibilities in the child's best interests before the entry of a final allocation judgment. Any temporary allocation shall be made in accordance with the standards set forth in Sections 602.5 and 602.7: (i) after a hearing; or (ii) if there is no objection, on the basis of a parenting plan that, at a minimum, complies with subsection (f) of Section 602.10." 750 ILCS 5/603.5(a) (West 2020).

Following the prescribed hearing, Section 602.7(a) of the Dissolution Act provides that the court shall allocate parenting time according to the child's best interests. *Id.* § 602.7(a). The court shall consider the 17 best interest factors enumerated under the Dissolution Act. *Id.* § 602.7(b) *et seq.* For example, the court shall consider relevant factors, such as the wishes of the child, the amount of time each parent spent performing caretaking functions with respect to the child in the preceding 24 months, the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests, and any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child, *inter alia. Id.*

¶ 19          As stated above, at no time during the approximate seven-month period from the filing of Jenkins and Sexton's petitions to determine parentage to the filing of Arroyo's notice of appeal in March 2021, did the court conduct an evidentiary hearing. The court has yet to receive any testimony relevant to the alleged parentage of either Jenkins or Sexton or the best interests of these minor children. It is axiomatic that the circuit court has no inherent authority to deviate from the statutory language of the Parentage Act or to exceed its parameters when construing the parentage of a party or the rights derived therefrom. *Interest of Armani S.*, 2020 IL App (1st)

200616, ¶ 65. The exercise of parental rights, "such as the right to have visitation with, or custody of, the child will only be granted upon a showing that such a grant is in the best interests of the child." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 200 (2007). In an apparent recognition of its statutory authority, the circuit court stated that it had to "stay within the framework of the law, but if a public policy or a personal policy for the children comes into play, then we're talking maybe we push the envelope a little bit."

¶ 20   Simply put, the circuit court flatly ignored the statutory requirements set forth by the Parentage and Dissolution Acts when granting the orders for temporary parenting time. Thus, the court lacked statutory authority to authorize temporary parenting time on both October 5, 2020, and February 11, 2021. For this reason, the court abused its discretion when it held Arroyo in contempt for failing to comply with those orders.

¶ 21   In conclusion, we decline to address Jenkins and Sexton's standing to participate and obtain relief in these proceedings, where the record is not developed enough to make such a determination. On remand, we direct the circuit court to conduct the requisite hearings, as provided for by the provisions of the Parentage and Dissolution Acts, such that the court may be armed with the facts to construe the rights of the parties as they relate to establishing parentage and allocating parental responsibilities.

¶ 22                                III. CONCLUSION

¶ 23   The judgment of the circuit court of Will County is reversed.

¶ 24   Reversed and remanded with directions.

10