# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Larsen v. D. Construction, Inc.*, 2021 IL App (1st) 191999

</div>

| | |
|---|---|
| Appellate Court Caption | EDWARD LARSEN, Plaintiff, v. D. CONSTRUCTION, INC., Individually and d/b/a D. Construction, P.T. Ferro Construction, and Gallagher Asphalt Joint Venture and d/b/a Gallagher Asphalt Corporation/P.T. Ferro Construction Company/D. Construction, Inc. Joint Venture; GALLAGHER ASPHALT CORPORATION, Individually and d/b/a D. Construction, P.T. Ferro Construction and Gallagher Asphalt Joint Venture and d/b/a Gallagher Asphalt Corporation/P.T. Ferro Construction Company/D. Construction, Inc. Joint Venture; P.T. FERRO CONSTRUCTION COMPANY, Individually and d/b/a D. Construction, P.T. Ferro Construction and Gallagher Asphalt Joint Venture and d/b/a Gallagher Asphalt Corporation/P.T. Ferro Construction Company/D. Construction, Inc. Joint Venture; D. CONSTRUCTION, P.T. FERRO CONSTRUCTION AND GALLAGHER ASPHALT JOINT VENTURE; GALLAGHER ASPHALT CORPORATION/P.T. FERRO CONSTRUCTION COMPANY/D. CONSTRUCTION, INC. JOINT VENTURE; HIGHWAY SAFETY CORP.; HIGHWAY TECHNOLOGIES, INC.; and KNIGHT E/A, INC., Defendants (Lisa K. Lange, Petitioner-Appellee, v. Robert Romero, Respondent-Appellant). |
| District & No. | First District, Second Division<br>No. 1-19-1999 |
| Filed | June 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-1943; the Hon. James N. O'Hara, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Michael I. Leonard and Rebecca S. Chacko, of LeonardMeyer LLP, of Chicago, for appellant.<br><br>Joanna C. Fryer, of Chicago, for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Robert Romero appeals from the trial court's award of attorney fees to Lisa K. Lange. Romero argues that the trial court erred in awarding Lange half of the fees realized from the settlement of the underlying personal injury action because the fee sharing agreement between him and Lange violated Rule 1.5 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 1.5 (eff. Jan. 1, 2010)). For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The action underlying this fee dispute is a personal injury action arising out of a motorcycle accident that occurred in 2008. In 2009, plaintiff, Edward Larsen, retained Romero's firm, Law Offices of Robert M. Romero, P.C., pursuant to a contingency fee agreement, to represent him in that personal injury action. At that time, Lange was an associate attorney at Romero's firm. In 2010, Romero's firm filed a complaint in Will County on Larsen's behalf. In January 2012, Lange and Romero went separate ways, and in February 2012, Lange filed a separate, additional appearance on behalf of Larsen in the Will County matter. In September 2012, Larsen voluntarily dismissed the Will County case.

¶ 4    In October 2012, Larsen's suit was refiled in Cook County as the present matter. The complaint identified Lange and Romero as co-counsel for plaintiff but was signed only by Lange. All of the other documents filed on plaintiff's behalf between October 2012 and April 2018 were signed by Lange. During this time, the record reflects extensive motion and discovery practice between Larsen and the many defendants, including heated litigation over defense attempts to transfer the case on the basis of *forum non conveniens*.

¶ 5    In April 2018, Lange filed a motion to withdraw as counsel for Larsen, stating that circumstances had changed such that she could no longer represent Larsen. The trial court granted Lange's motion. In May 2018, for the first time, Romero filed a formal appearance on behalf of Larsen in the present case.

¶ 6    In February 2019, Larsen and defendants settled the underlying action for $280,000. In April 2019, Larsen, represented only by Romero at this point, filed a motion to enforce the settlement agreement, alleging that $240,000 of the settlement amount remained outstanding from two defendants. Those two defendants filed responses to Larsen's motion to enforce the settlement, alleging that Lange had represented Larsen throughout most of the case and that defendants were not aware that Larsen was represented by Romero until 2018. Following settlement, Romero asked defendants to issue "clean" settlement checks made out only to Larsen and Romero's office. Romero represented to defendants that he would protect the attorney's lien Lange claimed.

¶ 7    Meanwhile, on April 5, 2019, Lange filed a motion to enforce and adjudicate her attorney's lien. In her motion, Lange alleged that she represented Larsen in the present action from 2012 through April 2018 and that, during that time, she provided substantial legal services. She contended that she was Larsen's former counsel by way of a contingency fee agreement for fees equal to 40% of the gross amount recovered, which Lange and Romero were to split equally. Lange was forced to withdraw as counsel for plaintiff after Romero, in March 2018, told Lange that he would no longer continue to work jointly with her on Larsen's and several other cases. Lange asserted that she had an attorney's lien on the settlement funds and asked the trial court to enforce her lien against the proceeds.

¶ 8    In response, Romero argued that he was retained to represent Larsen in 2009 and had not withdrawn or been discharged from representing Larsen since that time. Romero also argued that despite contending that she had been retained pursuant to a contingency fee agreement, Lange had not attached any such agreement to her motion and that absent a written contingency fee agreement pursuant to Rule 1.5(e), Lange was not entitled to recover any attorney fees on that basis.

¶ 9    In reply, and supported by affidavit, Lange asserted that in January 2012, when Lange was still employed with Romero's firm, Romero informed her that he intended to downsize his caseload and relocate his office. As a result, Lange and Romero reached a separation agreement under which Lange would retain certain files on which she had performed substantial work, including Larsen's case and a case known as "Lopez." On February 2, 2012, Romero and Lange agreed that Lange would continue performing the work on these matters, but that Romero would advance the case costs and they would split the realized fees 50/50. Romero agreed to obtain a revised contract from Larsen, setting forth the fee split agreement between Romero and Lange. The following day, Lange e-mailed Romero to inform him that he would likely receive a fax showing that a deposition in Larsen's case had been continued at her request. She asked that Romero confirm when he had a new contract, so that she could file an additional appearance or substitute for Romero. Lange averred that Romero told Lange that he was going to meet with Larsen on February 4, 2012, and thereafter, Romero informed Lange that he had obtained Larsen's signature on a new fee agreement that set forth the fee splitting agreement between Lange and Romero. Accordingly, on February 10, 2012, Lange filed her appearance on behalf of Larsen in the Will County filing. Lange represented that she believed she had received a copy of the agreement signed by Larsen but could not locate it.

¶ 10    Lange argued that the agreement between her and Romero to split the fees in this matter 50/50 did not violate Rule 1.5(e) because that rule did not apply to payments made pursuant to a separation agreement between attorneys who were formerly associated in the same firm. Lange also argued that Romero should not be permitted to use Rule 1.5 as a shield where the

lack of compliance was a direct result of his failure to obtain a signed contract from Larsen. To do so would be to unjustly enrich Romero. In addition, Lange argued, as a joint venturer, Romero breached his fiduciary duty by failing to obtain Larsen's written consent. In any case, Lange argued, even if there was no enforceable agreement to split fees, she was entitled to recover attorney fees under a theory of *quantum meruit*.

¶ 11    On May 23, 2019, the trial court ordered Romero to produce any and all contracts signed by Larsen and, if no such contracts existed, to state under oath in writing whether he obtained a signed contract or consent to referral from Larsen. The trial court directed Romero to comply by May 31, 2019. The record does not reflect that Romero ever complied with this directive.

¶ 12    Thereafter, Lange filed an amended petition to enforce and adjudicate her attorney's lien (amended petition). In the amended petition and the supporting memorandum, Lange reasserted the arguments she made in her initial motion to enforce and adjudicate her lien and in her reply in support of that motion. She also submitted documentation indicating that she had expended 265.4 hours representing Larsen and affidavits from her and another local attorney averring that $350 is a reasonable hourly rate for her services.

¶ 13    The trial court entered an order granting Lange leave to conduct discovery regarding client contracts and consents to referral and setting a date by which Romero was to respond. After the expiration of Romero's time to respond, the trial court entered an order setting a date for the issuance of a decision. The trial court also noted in the order that Romero had not appeared and that he would not be permitted to file any further response or objection without leave of court.

¶ 14    Six days later, Romero filed a motion for leave to file a response to Lange's amended petition, which the trial court denied. The trial court later reconsidered its denial, granted Romero leave to file his response, and directed Romero to answer discovery.

¶ 15    In his response, Romero denied that he ever agreed to split fees with Lange 50/50, that there ever existed a contract between Larsen and Lange for the provision of fees, that Larsen ever consented to the sharing of fees between Romero and Lange, or that Lange ever performed substantial legal services on behalf of Larsen. Accordingly, Romero argued, Lange was not entitled to recover fees based on contract, joint venture, or *quantum meruit*. He also requested that if the trial court were inclined to award fees to Lange, it first conduct an evidentiary hearing to resolve disputed issues. In support of his response, Romero submitted an affidavit in which he averred that Lange never performed substantial legal work on behalf of Larsen after she left Romero's firm and that, to the extent that Lange did perform legal work on behalf of Larsen, it was done in exchange for Romero performing legal work on Lange's cases.

¶ 16    Romero also filed his response to interrogatories issued to him by Lange. In those responses, Romero denied that he ever obtained or attempted to obtain Larsen's consent to a fee sharing agreement between him and Lange, that he was ever aware of a written fee sharing agreement between him and Lange signed by Larsen, or that he ever told Lange that he had obtained the written consent of Larsen to such an agreement.

¶ 17    In her reply in support of her amended petition, Lange argued that regardless of whether there existed a written contract, Romero had not presented any evidence or authority creating a genuine dispute regarding her *quantum meruit* claim, and, therefore, she was entitled to recovery on that basis. In addition, Lange maintained her position that her agreement to split the fees in this matter was enforceable, regardless of whether Larsen consented in writing, because the agreement with Romero was part of a separation agreement. Lange also argued

that Larsen voluntarily accepted Lange's legal services, knowing that she and Romero were sharing the fees, as evidenced by an e-mail from Larsen to Lange and Romero in November 2013. In that e-mail, Larsen asked Lange and Romero, "Last question for the day[,] do I need to drop [Romero] off the emails or are the two of you still sharing this case?" Lange also submitted a supplemental affidavit in which she averred that she never agreed to do work on the present case in exchange for Romero doing work on any of her cases.

¶ 18    On September 25, 2019, the trial court entered an order finding that "[a]ttorney Lisa Lange is entitled to one half of the forty percent attorney's fee pursuant to the contingent fee agreement."

¶ 19    Romero then instituted this appeal.

## II. ANALYSIS

¶ 20

¶ 21    Romero's sole contention on appeal is that the trial court abused its discretion in awarding Lange fees, "pursuant to the contingent fee agreement," because there was no written contract under which Lange was entitled to share in the fees realized on the underlying case and no written consent by Larsen to any such fee-sharing agreement. Because we conclude that a written fee-sharing agreement signed by Larsen was not required under the circumstances of this matter, we affirm.

¶ 22    We review a trial court's award of attorney fees for an abuse of discretion. *DeLapaz v. SelectBuild Construction, Inc.*, 394 Ill. App. 3d 969, 972 (2009). An abuse of discretion occurs when "no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id.*

¶ 23    In support of his position that the trial court abused its discretion, Romero cites Rule 1.5, which governs attorneys' ability to charge and share fees. More specifically, Romero cites Rule 1.5(c) and Rule 1.5(e). Rule 1.5(c) governs contingency fee agreements and details the requirements of such agreements, including that they be in writing and signed by the client. Rule 1.5(c) is inapplicable here, however, because the issue is not whether there was a proper agreement under which Larsen would be charged a contingency fee, but whether Lange was entitled to share that contingency fee with Romero. That question is governed by Rule 1.5(e).

¶ 24    Rule 1.5(e) provides as follows:

"A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;

(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

(3) the total fee is reasonable." Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

Our supreme court has stated that each of Rule 1.5(e)'s subsections is a separate and distinct condition that must be met before a fee-sharing agreement can be enforced. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 35. "They are in the nature of a checklist in which each of the enumerated items must be crossed off before moving to the next, and all must be checked off before the fees may be divided." *Id.* Because Rule 1.5 embodies Illinois's public

policy of placing clients' rights above any remedies for lawyers seeking to enforce fee-sharing agreements, fee-sharing agreements that violate Rule 1.5 also violate public policy and are unenforceable. *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, ¶ 53.

¶ 25        Romero argues that Lange was not entitled to share in the fees recovered in the current action because, in violation of Rule 1.5(e)(2), there was no written consent from Larsen to the fee-sharing agreement. Without question, Lange did not produce a signed, written consent to the fee-sharing agreement by Larsen. She did, however, contend that Romero agreed to obtain one and told her that he had done so. She also stated that she believed she received a copy of a signed consent by Larsen, but that she could no longer find it. Romero, on the other hand, denied in his responses to interrogatories that he obtained written consent from Larsen or told Lange that he had.

¶ 26        Ultimately, this dispute over whether Larsen consented in writing or whether Romero told Lange that Larsen had consented in writing is irrelevant. Comment 8 to Rule 1.5 provides, "Paragraph (e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm, or payments made pursuant to a separation or retirement agreement." Ill. R. Prof'l Conduct (2010) R. 1.5 cmt. 8 (eff. Jan. 1, 2010). As a result, an agreement to pay fees to a former associate pursuant to a separation agreement does not need to comply with the requirements of Rule 1.5(e), so long as such payment does not otherwise violate Illinois public policy. See *Romanek v. Connelly*, 324 Ill. App. 3d 393, 403-04 (2001) (concluding that the parties' fee-sharing agreement, made as part of their separation agreement, was not subject to the requirements typically applied to fee-sharing agreements, where the agreement did not otherwise implicate public policy concerns).

¶ 27        Based on the record before us, we conclude that the trial court was well within its discretion to conclude that Lange and Romero agreed, as a part of a separation agreement, to split any fees realized in the underlying action 50/50. In the trial court, Lange alleged—supported by her affidavit—that as part of her separation from Romero's firm, she and Romero agreed that she would retain certain cases on which she had done a substantial amount of work, including the present action and the Lopez case. Romero would front the case expenses, and Lange and Romero would split evenly any attorney fees realized on the cases. In addition to her affidavit, Lange submitted an e-mail she sent to Romero on February 2, 2012, in which she offered to split the fees on the present case and the Lopez case 50/50 with Romero. She also submitted an e-mail she sent to Romero on February 3, 2012, informing Romero that he would likely receive notice that a deposition in the present case had been continued at her request and asking that Romero notify her when he had a new contract, so that she could file her appearance or substitute in as counsel. According to a copy of the Will County clerk's docket submitted by Lange, a week later, on February 10, 2012, Lange filed her appearance in the underlying action while it was pending in Will County. Lange also submitted a copy of the written consent signed by the clients in the Lopez case to Romero and Lange's agreement to share fees in that case 50/50. Finally, Lange submitted a November 2013 e-mail from Larsen to Lange and Romero that clearly indicates that Larsen was aware that Lange and Romero were handling the matter jointly.

¶ 28        The record on appeal further demonstrates that after Larsen's cause of action was voluntarily dismissed in Will County and refiled in Cook County, Lange was the only attorney with an appearance on record for Larsen until May 2018, when Romero finally filed his

appearance. Accordingly, from the court record at least, it appears that for over five years, Lange was the attorney who primarily handled this matter.

¶ 29        When all of this is taken together, a reasonable person could easily conclude that Romero and Lange, in resolving issues and dividing work upon their separation, agreed that they would split the fees on the underlying action evenly. Such a conclusion appears logical, given Lange's offer to split the fees on this case and the Lopez case 50/50, Romero's written acceptance of that offer in the Lopez case, Lange's filing of an appearance in the underlying action, and Lange's extensive work on the underlying action. It seems far less plausible that Lange would offer to share the fees on the underlying action and Lopez, two cases she was to retain in the separation, with Romero, but then proceed to perform over five years' worth of litigation work in the underlying action without having reached an agreement on the fees. Moreover, Romero's willingness to accept the same fee division on the Lopez case, the timing of Lange's filing of her appearance shortly after sending an e-mail asking for confirmation of the agreement, and Larsen's clear understanding that Lange and Romero were jointly handling the case also support the conclusion that Lange and Romero reached the fee-sharing agreement as part of their separation.

¶ 30        Because the trial court could have reasonably concluded that Lange and Romero agreed, as a part of Lange's separation from Romero's firm, that Lange would be paid half of any fees realized on the underlying action, the conclusion that Lange was entitled to an award of such fees was not an abuse of discretion. Moreover, because the agreement to make such a payment of fees to Lange was part of Lange and Romero's separation agreement, it was not subject to the requirements of Rule 1.5(e), and the lack of written consent from Larsen did not render the agreement unenforceable, so long as it does not otherwise violate any public policy of this state.

¶ 31        We do not see the agreement as violative of any public policy, and Romero certainly has made no argument on appeal in that respect. In fact, Romero makes no argument at all on appeal in response to Lange's contention that the fee-sharing agreement was not subject to Rule 1.5(e) because it was made as part of a separation agreement. We also do not see anywhere in the record where Romero offered any response to this contention in the trial court. Notably, Romero did not include a transcript of the September 25, 2019, status hearing at which the trial court issued its decision awarding Lange attorney fees. Thus, to the extent that such a transcript might have contained additional argument or evidence that might have affected our decision here, we must assume that it supported the trial court's award of attorney fees to Lange. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 32        We note that the trial court's reasoning in reaching its decision to award fees to Lange is not readily apparent from the record, given Romero's failure to provide a transcript of the September 25, 2019, hearing and the lack of explanation in the trial court's written order. That fact does not alter our conclusion, however, because we review the trial court's decision, not the reasons for that decision, and we may affirm on any grounds supported by the record, regardless of whether the trial court relied on those grounds. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 33    Finally, we observe that even if we concluded that it would have been an abuse of discretion to award Lange fees pursuant to the fee-sharing agreement between Lange and Romero, she would nevertheless have been entitled to recover reasonable attorney fees based on *quantum meruit*.[1] Under the doctrine of *quantum meruit*, a discharged attorney is entitled to recover reasonable attorney fees for the work performed before her discharge. *Thompson v. Buncik*, 2011 IL App (2d) 100589, ¶ 8. In situations where the discharged attorney performed much of the work on the case prior to discharge and the case is settled very soon after the discharge, it is entirely possible that a reasonable fee for the discharged attorney's work would be the entire contract fee. *DeLapaz*, 394 Ill. App. 3d at 973-74.

¶ 34    Despite Romero's attempt to claim otherwise, it is abundantly clear from the record on appeal that Lange performed extensive work over the five-plus years prior to her withdrawal. Although Lange submitted an itemization of the hours she spent on the underlying action and her claimed costs, along with affidavits attesting to the standard hourly rate charged by attorneys of her caliber, the question of what constitutes reasonable attorney fees requires the consideration of a number of factors. See *id.* at 973 (identifying factors). That consideration and weighing of factors is best left, in the first instance, to the trial court, given the trial court's firsthand observation of the attorney's work and the trial court's understanding of the skill and time required in the case. See *Thompson*, 2011 IL App (2d) 100589, ¶ 8. Nevertheless, given our review of the record, we believe that Romero likely fared better under the trial court's decision, as affirmed today, than he would if we were to send this matter back for the determination of reasonable fees under the doctrine of *quantum meruit*.

¶ 35                                III. CONCLUSION
¶ 36    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 37    Affirmed.

---

[1]Notably, Romero does not suggest anywhere that Lange is not entitled to recovery based on *quantum meruit*. Instead, his only contention in this respect appears to be that she is not entitled to the amount of fees she claims to be under *quantum meruit*.