2023 IL App (1st) 220289-U
No. 1-22-0289

FIRST DIVISION
July 24, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | Appeal from the Circuit Court of |
| KELLY KNABB, | ) | Cook County, Domestic Relations |
| | ) | Division |
| Petitioner-Appellant, | ) | |
| | ) | No. 2020 D 3985/2020 D 4001 |
| v. | ) | |
| | ) | The Honorable |
| JACOB KNABB, | ) | Robert W. Johnson, |
| | ) | Judge Presiding. |
| Respondent-Appellee. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the circuit court in its Allocation Judgment and Parenting Plan, finding no reason to disturb the court's determinations allocating parenting time, decisionmaking authority, child support obligations, and other related matters between the parties in their dissolution of marriage proceedings. We also affirm the judgment of the circuit court ordering Petitioner-Appellant to pay Respondent-Appellee's attorney's fees for her violation of the court's orders.

¶ 2    Petitioner-Appellant Kelly Knabb ("Kelly") appeals from multiple rulings found across four orders entered by the circuit court in the divorce proceedings between Kelly and Respondent-

Appellee Jacob Knabb ("Jacob.") The first order, entered on October 7, 2020[1], granted Jacob's emergency petition to temporarily terminate Kelly's parenting time. The second order was entered on December 16, 2020, granting in part and denying in part Jacob's subsequent emergency petition to temporarily restrict Kelly's parenting time.[2, 3] The third order is the Judgment of Dissolution of Marriage and Allocation Judgment and Parenting Plan entered on February 22, 2022 ("Allocation Order.") The fourth order, entered on May 25, 2022, required Kelly to pay Jacob's attorney's fees in the amount of $8,982 pursuant to 750 ILCS 5/508(b). For the following reasons, we affirm the judgment of the circuit court in the latter two orders, and we find that the orders on Jacob's emergency petitions to temporarily modify Kelly's parenting time are moot.

¶ 3                              BACKGROUND

¶ 4                       Orders Addressed on Appeal

¶ 5      As an initial matter, we note what Kelly seeks on appeal and what we will address in our ruling. In her Amended Notice of Appeal, where required to list the dates of all orders and judgments she wishes to appeal, Kelly identifies four orders, entered on September 29, 2020, June 3, 2021, December 15, 2021, and February 22, 2022. In stating the relief sought, she requests that we order the circuit court to vacate nine orders—the four previously-mentioned orders, as well as orders entered on October 2, 2020, December 16, 2020, December 11, 2020, March 19, 2021, May 25, 2022.[4] In her Amended Docketing Statement, she identifies five issues raised on appeal, without referring to specific orders. She states that the circuit court erred in (1) suspending her

---

[1] This order is stamped with a filing date of October 2, 2020; however, according to the record, this appears to have been in error. Regardless, the discrepancy does not have bearing on our analysis.
[2] This order was also in response to Kelly's motion to reconsider the October 7 order; while the court did not address the disposition of this motion in its ruling, the effect of this order further altered Kelly's parenting time.
[3] Kelly describes this order as affirming the October 7 order; however, it appears that the December order had the effect of further limiting Kelly's parenting time.
[4] She also lists an order entered on September 26, 2020; however, as there was no order entered that date, we believe this refers to the aforementioned September 29, 2020 order.

parenting time when she was without counsel; (2) finding, after trial, that Jacob should be given sole decisionmaking authority over and made the primary residential parent of their minor child; (3) failing to make a finding of bias against the guardian *ad litem* ("GAL"); improperly imputing Kelly's income to determine her child support obligations; and (5) ordering Kelly to pay a portion of Jacob's attorney's fees. Kelly's appellant's brief includes five issues from which she seeks relief: (1) reversal of the circuit court's October 7, 2020 order and December 16, 2020 order affirming that order, made against Kelly when she was without counsel; (2) reversal of the circuit court's allocation of sole decisionmaking authority and made the primary residential parent; (3) revision of the aforementioned allocation to a joint 50/50 split of parenting time; (4) reversal of the circuit court's imputation of Kelly's income as well as any child support obligations determined based off of the imputed income; and (5) reversal of the award of attorney's fees in favor of Jacob and against Kelly. She also states that her appeal arises from three separate orders, entered on October 7, 2020, February 22, 2022, and May 25, 2022.

¶ 6     To provide clarity on the various discrepancies in what, precisely, Kelly challenges on appeal, we state that we will consider only those issues raised in her appellant's brief. Based on the relief sought, we find the relevant circuit court orders to be: (1) the October 7, 2020 order granting Jacob's emergency petition to temporarily terminate Kelly's parenting time, entered when Kelly was without counsel; (2) the December 16, 2020 order further restricting her parenting time; (3) the Allocation Order of February 22, 2022, which includes the imputation of income and the determination granting Jacob sole decisionmaking authority and making him the primary residential parent; and (4) the May 25, 2022 order awarding Jacob attorney's fees for Kelly's violation of two court orders.

¶ 7                                              History

¶ 8      This matter arises out of a dissolution of marriage action commencing on June 26, 2020. Kelly and Jacob both filed Petitions for Dissolution of Marriage on that day, and the matter was consolidated into one action. The parties have one minor child, born on September 22, 2013.

¶ 9      On August 13, 2020, the circuit court entered an order enjoining the parties from engaging in various conduct, including discussing the litigation with their child and posting about the litigation on social media. On September 29, 2020 the court granted Kelly's then-counsel's motion to withdraw. The court set a status date of October 14, 2020 on the matter of Kelly's representation.

¶ 10     Prior to that status date, Jacob filed an Emergency Petition to Temporarily Terminate Kelly Knabb's Parenting Time and Other Relief ("Emergency Petition 1")[5] on October 6, 2020. He cited to multiple examples of how Kelly's behavior was harming their child's mental and emotional health and that she was coaching him to lie to and be prejudiced against Jacob and the GAL. The circuit court granted his emergency petition on October 7, 2020, writing that it found the matter to be an emergency, and that Kelly's parenting time would be temporarily suspended until further order of the court, with a limited exception of two dates between October 8 and 16, 2020 for up to three hours, under certain other enumerated conditions. The court also ordered Kelly to undergo a psychological evaluation pursuant to 750 ILCS 5/604.10.

¶ 11     Kelly appeared *pro se* at the October 7 hearing. Her new counsel filed an appearance on October 9, 2020. On October 15, 2020, through new counsel, she filed a motion to reconsider the October 7, 2020 order, arguing that she should have been allowed the full 21 days pursuant to

---

[5] To clarify, this is not the first emergency petition Jacob filed in the underlying matter, nor is Emergency Petition 2 the second emergency petition filed; the distinction is for the purposes of this order, to distinguish between the circuit court's rulings on the two emergency petitions that Kelly contests on appeal.

Illinois Supreme Court Rule 13(c) to obtain new counsel before the court heard and ruled on Jacob's Emergency Petition 1. The court denied her motion.

¶ 12 On December 2, 2020, Jacob filed his Emergency Petition to Temporarily Terminate Kelly Knabb's Parenting Time and Other Relief ("Emergency Petition 2"). He alleged that Kelly continued to behave in ways that further harmed their child's mental and emotional health. The circuit court issued its ruling on this petition on December 16, 2020, finding that the GAL had conducted a thorough investigation of the child, the parties, and the circumstances surrounding the litigation; that Kelly's behavior had seriously endangered the mental and emotional wellbeing of her child; and that she had violated the August 2020 order by discussing the litigation with their child. The court granted in part and denied in part Jacob's Emergency Petition 2, reducing Kelly's parenting time and setting other relevant conditions.

¶ 13 On June 3, 2021, the circuit court entered an order requiring Kelly to pay $14,000 in discovery sanctions.

¶ 14 The circuit court set the matter for trial from December 6-10 and 13 2021, and over the six days, heard testimony from the parties and the GAL. On December 15, 2021, the court entered an order finding a *prima facie* showing of indirect civil contempt and issuing a rule to show cause against Kelly for failure to pay discovery sanctions as per its June 3, 2021 order. Following trial and after reviewing the 604.10(b) evaluation; the court's own *in camera* interview with the child; and the four reports prepared by the GAL, the court entered a Judgment of Dissolution of Marriage and Allocation Judgment and Parenting Plan on February 22, 2022. The Allocation Order increased Kelly's parenting time but assigned sole decisionmaking authority to Jacob and made him the primary residential parent for the child.

¶ 15     On March 23, 2022, Jacob filed a Motion to Reconsider and Clarify February 22, 2022 Judgment. He sought clarification of whether the court's order that the GAL fees were to be divided equally between the parties applied retroactively to the appointment of the GAL, and reconsideration of (1) his request for sanctions against Kelly for misrepresentations by her counsel at trial, which the circuit court noted on the record but did not address in its final judgment; and (2) his request of an award for attorney's fees as sanctions for Kelly's violation of two prior court orders. Regarding the plea for attorney's fees, Jacob states in his motion that he incurred reasonable fees in the amount of roughly $5,000 for the first finding of contempt, which he identifies as the court's finding in the December 16, 2020 order that Kelly had violated the August 13, 2020 order, and $3,982 for the second finding of contempt, which he identifies as the December 15, 2021 finding of indirect civil contempt for Kelly's failure to pay the June 3, 2021 discovery sanctions. The circuit court entered an order on May 25, 2022, with the pertinent ruling challenged on appeal being the awarding of attorney's fees against Kelly in the amount of $8,982 pursuant to 750 ILCS 5/508(b).

¶ 16     On appeal, Kelly argues that the October 7, 2020 order should be reversed because she was not given 21 days to secure new counsel. She also argues that the circuit court erred in making the following findings of fact: (1) that the parties were incapable of joint decisionmaking and therefore Jacob would be awarded sole decisionmaking authority and would be the primary residential parent for the minor child; (2) that the GAL was biased against Kelly and in favor of Jacob in making her recommendations to the court, on which the court based its aforementioned finding; (3) that the court should not have imputed Kelly's income for the purposes of determining child support obligations (a) at all, and (b) to be $71,000, over her claims that she was unemployed, could not be employed, and only received Social Security Disability Income ("SSDI"); and (4)

that there was evidence of any contempt findings or violations of court orders to support the award of attorney's fees against Kelly. She further argues that the circuit court ignored such facts as the parties' history of prior successful 50/50 co-parenting and Kelly's history of being the child's primary caretaker.

¶ 17    Overall, Kelly challenges numerous factual findings of the circuit court, and the conclusions of the GAL that the circuit court relied upon in making its judgments, alleging that the court ignored the GAL's hostility to and bias against Kelly at every stage of the GAL's involvement in the matter. Regarding her challenge to the court's order of attorney's fees against Kelly, she argues that the court should not have imputed her income in the first place because none of the situations in which a court may impute income applied to her, and furthermore, that the court made erroneous or impermissible findings of fact in order to impute her income to be $71,000, notably by improperly considering her spending habits; ignoring the evidence that certain deposits into her bank account were not income; ignoring the fact that she was incapable of employment as determined by the Social Security Administration ("SSA") in accepting her application for SSDI; and ignoring the evidence that her sole income consisted of monthly SSDI payments of approximately $1,050. Finally, she argues that the circuit court improperly accepted Jacob's request for attorney's fees in the amount of $8,982 because Jacob did not support this request with any itemization of costs or other evidence establishing why this amount was reasonable or accurate. We took the appeal on Kelly's brief only.

¶ 18                                    ANALYSIS

¶ 19                                  I. Jurisdiction

¶ 20    As an initial matter, we address whether we have jurisdiction to review certain orders challenged by Kelly on appeal. Kelly's jurisdictional statement addresses only the February 22,

2022 judgment of dissolution of marriage and May 25, 2022 order on Jacob's motion to reconsider. Jacob did not file a response. Regardless, we may determine whether we have jurisdiction. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67 ("Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal.")

¶ 21    The October 7, 2020 and December 16, 2020 orders are both in response to Jacob's emergency petitions to temporarily limit Kelly's parenting time. The October order specifies that Kelly's parenting time was to be temporarily suspended until further order of the court, with an exception for two dates of supervised parenting time to be conducted between October 8 and 16. The December 16 order also granted Jacob's petition to temporarily limit Kelly's parenting time, to certain specified limits enumerated in the order. Neither order is presented as a final determination of Kelly's parenting time, and both orders were superseded by the February 22, 2022 Allocation Order. *See also In re Marriage of Fields*, 283 Ill. App. 3d 894, 901 (1996) ("A temporary custody order is necessarily provisional "and continues only during the pendency of the action.") Furthermore, the circuit court even increased Kelly's parenting time in various orders entered after the October 7, 2020 and December 16, 2020 orders that she challenges on appeal, and prior to the court's decision in the Allocation Order.

¶ 22    The Allocation Order is a final allocation judgment pursuant to the Illinois Marriage and Dissolution of Marriage Act ("the Act"), and includes a provision setting Kelly's parenting time, and the record reflects that this is the most current order regarding said allocation. Kelly acknowledges that the court increased her allowed parenting time from the October and December 2020 orders, although she challenges the court's decision to grant Jacob sole decisionmaking authority and to make him the primary residential parent.

¶ 23    Furthermore, we find that Kelly's objection to the October 7, 2020 order based on the fact that she had not been allowed a full 21 days to secure new counsel, is unfounded. While our courts have interpreted Ill. Sup. Ct. R. 13 to require a court to afford a 21-day continuance following the withdrawal of counsel for the affected party to obtain new counsel, and it may constitute reversible error if the court renders any rulings that would prejudice that party's rights during that time, it is not reversable error in every such instance. *See In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶¶ 17-19. In determining whether such a reversible error occurred, we consider the particular facts and circumstances surrounding the particular motion to withdraw, including:

> [W]hether the party fired the attorney, when the motion to withdraw was filed in relation to upcoming proceedings, whether the party claims they were prejudiced by actions taken within 21 days of the withdrawal, whether the party appeared at the hearing that resulted in the order challenged on appeal, how soon after granting the withdrawal the trial court took allegedly prejudicial action, whether subsequently retained counsel appeared and was ready to proceed at proceedings within 21 days, and whether the party had notice of the intent to withdraw and/or the order granting withdrawal. *Id.* at ¶ 19.

We acknowledge that Kelly did state at the hearing on Emergency Petition 1 and in her statement in opposition to the petition that she was without counsel. However, she was present at the hearing, presented her arguments against the petition, and did not claim she was prejudiced by being without counsel. While she did file a motion to reconsider, she incorrectly claims that the court denied her the full 21 days to secure new counsel by holding a hearing on Emergency Petition and entering the October 7, 2020 order prior to the end of the 21-day period. This did not indicate that she was prohibited from obtaining new counsel after, which we note she did on October 9, 2020—ten days after the court allowed her former counsel to withdraw. There is also no indication that she was unaware that her counsel was withdrawing. Finally, we see no reason to disrupt the circuit court's finding that the matter raised by Jacob was validly an emergency and needed to be addressed in a timely manner. We find no basis for concluding that the October 7, 2020 order is

void as being the result of reversible error due to the court issuing its ruling prior to Kelly obtaining new counsel.

¶ 24    We conclude that the challenged rulings properly before us for review are the February 22, 2022 Allocation Order and the May 25, 2022 order, having determined that the two challenged 2020 orders are moot in light of the Allocation Order. *See In re Marriage of Palarz*, 2022 IL App (1st) 210618, ¶¶ 23-24 (Father's appeal of the allocation judgment was properly before the court; his challenges to orders extending an emergency order of protection that had since expired on its own terms were moot because there was no actual controversy remaining to be addressed on appeal.)

¶ 25                              <u>II. Standard of Review</u>

¶ 26    Determinations of parenting responsibilities are within the sound discretion of the deciding court. *Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill.2d 540, 557 (1998); *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24. We review such decisions under a very deferential standard of review. *In re G.L.*, 2017 IL App (1st) 163171 at ¶ 24; *In re Marriage of Wendy L. D. and George T. D., III*, 2017 IL App (1st) 160098, ¶ 76. As our supreme court has explained:

> The standard of review of custody modification judgments[6] is the manifest weight of the evidence. The trial court is in the best position to review the evidence and to weigh the credibility of the witnesses. In determining whether a judgment is contrary to the manifest weight of the evidence, the reviewing court views the evidence in the light most favorable to the appellee. Where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the court's order. A custody determination, in particular, is afforded great deference because the trial court is in a superior position to judge the credibility of the witnesses and determine the best interests of the child. (Internal quotation marks and citations omitted.) *In re Marriage of Bates*, 212 Ill.2d 489, 515-16 (2004).

---

[6] We note that effective January 1, 2016, the terms "allocation of parental responsibilities: decision making" and "allocation of parental responsibilities: parenting time" have replaced the phrase "custody" throughout the Illinois Marriage and Dissolution of Marriage Act. *See* Pub. Act 99-90, §§ 5-15 (eff. Jan. 1, 2016). The standard of review applicable to an appeal of a trial court's determination of parental responsibilities formerly referred to as custody remains unchanged.

We will not reverse the circuit court's determinations of parental responsibilities unless they are (1) against the manifest weight of the evidence; (2) manifestly unjust; or (3) the results of a clear abuse of discretion. *In re G.L.*, 2017 IL App (1st) 163171 at ¶ 24. Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings. *Id.*; *In re Marriage of Ricketts*, 329 Ill.App.3d 173, 177 (2002).

¶ 27 We review the circuit court's award of attorneys' fees pursuant to an abuse of discretion standard. *DeLapaz v. SelectBuild Construction, Inc.*, 394 Ill.App.3d 969, 972 (1st Dist. 2009). The court abuses its discretion if "no reasonable person would take the view adopted by the trial court." *Id.* (quoting *In re Marriage of Heroy*, 385 Ill.App.3d 640, 651 (1st Dist. 2008)). The party seeking attorney fees bears the burden of presenting sufficient evidence to establish that the requested fees are reasonable. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2014 IL App (1st) 130962, ¶ 28. In determining the reasonable value of attorney fees, a court should consider "the skill and standing of the attorney, the nature of the cause, novelty and difficulty of the questions at issue, importance of the subject matter, degree of responsibility involved in managing the case, time and labor required, customary charges in the community, benefits resulting to the client, and the connection between the amount of fees sought and the amount of money involved in the litigation." *Id.*

¶ 28 <u>III. February 22, 2022 Allocation of Parental Responsibility and Support</u>

¶ 29 On appeal, Kelly seeks the reversal of the circuit court's allocation of sole decisionmaking authority and role as primary custodial parent to Jacob, as well as the court's decision on how much parenting time should be afforded to Kelly. She additionally asks for the allocation to be revised to order joint decisionmaking authority and a 50/50 split of parenting time. She also argues that the circuit court erred in deciding to impute an income for her and that there was no evidence

supporting its finding that her imputed income was $71,000 for the purpose of determining child support.

¶ 30       *a. Allocation of Parental Decisionmaking and Primary Residential Parent*

¶ 31    Kelly's challenges to the circuit court's allocation of parental authority are challenges to numerous factual findings, which we will not reverse unless they are against the manifest weight of the evidence. She points to instances where she testified at trial that she and Jacob had successfully co-parented their child while they were separated and that she had a demonstrated history of acting to protect the child's interests and safety. She further states that Jacob, the GAL, and the psychologist who conducted the 604.10(b) evaluation at various points testified in support of the fact that Kelly and Jacob had a history of joint decisionmaking regarding their child. Kelly also makes numerous claims of bias on the part of the GAL against Kelly and in favor of Jacob, including the GAL's admission that she had a professional friendship with Jacob's counsel, the GAL's alleged differential treatment and review of evidence submitted by Kelly and Jacob, the GAL allegedly taking Jacob's side in disagreements between the parties and general bias in favor of Jacob and against Kelly, including in remarks she made at trial, and the GAL's alleged threat to sue Kelly if Kelly did not pay her portion of the GAL's fees. All of these apparent indications of bias are listed to support Kelly's claim that the GAL changed her original recommendation of a 50/50 split of parenting responsibility to ultimately recommending limited parenting time for Kelly.

¶ 32    In sum, Kelly's argument is that the circuit court should have found her testimony about her parenting ability, her history of co-parenting with Jacob, and her ability to cooperate and communicate with Jacob to be more credible than Jacob's testimony and the GAL's conclusions. We find no indication that the circuit court ignored any testimony of the parties having a history

of co-parenting prior to commencing dissolution proceedings. The record also contains various examples of the parties' breakdown in communication and ability to peacefully work together in making parenting decisions; indeed, Kelly admits that she and Jacob argued over several decisions regarding the care of their child, and the course of the dissolution proceedings supports this. Ultimately, the circuit court was in a superior position to assess the credibility of the parties and weigh the evidence. The court had extensive opportunity to observe the parties, not only to hear their testimony, but also to observe their demeanors and other behavior that would assist the court in determining the credibility of that testimony.

¶ 33 Kelly also specifically claims that the circuit court improperly ignored her history of being the primary custodial parent, going against the presumption in her favor as the present custodial parent. *See In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 180 (2d Dist. 2002). The circuit court was required to make its allocation determination in accordance with the best interests of the child. *See In re Custody of G.L.*, 2017 IL App (1st) 163171 at ¶ 42; 750 ILCS 5/602.7(a) (West 2020). One of the 17 listed factors for the court to consider under the Act is the amount of time each parent previously spent performing caretaking functions. *See* 750 ILCS 5/602.7(b). However, it is only one of the factors, the list of factors is not exclusive, and the court may also consider any other relevant factor. *See In re Custody of G.L.*, 2017 IL App (1st) 163171 at ¶ 42. The court is also not required to specifically make a finding as to each factor, and the court is presumed to know the law and follow it accordingly. *Id*. at ¶ 43. Here, the court was apprised of the parties' history of parenting their child, including Kelly's role in doing so. However, the court also ruled several times to limit Kelly's parenting time, having found cause to do so based on her behavior and based on the health and safety of the child. We find no reason to disturb the court's allocation

of parenting time and responsibility despite Kelly's previous caretaking activity prior to the dissolution proceedings.

¶ 34                              *b. Kelly's Allegations of GAL Bias*

¶ 35    Kelly's argument that the circuit court should have found the GAL to be biased in favor of Jacob and against her does not stem from a specific finding of the court that the GAL lacked bias; rather, she includes it in support of her request that we reverse the court's allocation of parental responsibility in its Allocation Order. The fact that the GAL changed her initial recommendation of an equal split of parenting time and decisionmaking authority to recommending a more limited schedule for Kelly does not indicate improper bias or malice against her; the record reflects that the GAL conducted numerous interviews and an investigation that resulted in four reports that she presented to the court. There is no indication that her recommendation changed not as a result of the time she spent observing the parties and the child, but because of some improper motive. She furthermore testified at trial, including answering questions posed by Kelly's counsel, during which the court had the opportunity to hear the extent of her familiarity and prior relationship with both parties' counsel. She stated that, prior to being appointed GAL in this case, she had no knowledge of either Kelly or Jacob, and we find no evidence to the contrary in the record. The fact that professionals working in the same field have professional relationships or other past interactions with one another does not create any presumption of bias. Regarding the credibility of the GAL, as we previously stated with regards to the parties, we defer to the circuit court's discretion in being able to see and hear her at trial, as well as to review each of her reports, and to consider her testimony in light of the overall record.

¶ 36    Even if the circuit court could have reached a different decision in any of its findings, we will not reverse it unless a review of the record clearly demonstrates that the opposite result was

the proper one. *See In re April C.*, 326 Ill.App.3d 245, 257 (1st Dist. 2001). Furthermore, under the manifest weight of the evidence standard, we affirm the circuit court's ruling if there is any basis in the record to support its findings. *In re Custody of G.L.*, 2017 IL App (1st) 163171 at ¶ 24. We are not presented with any basis for which to draw such a conclusion regarding the circuit court's allocation of parenting time and authority, and we will not disturb the judgment of the circuit court.

¶ 37        *c. The Court's Imputation of an Annual Income of $71,000 to Kelly*

¶ 38    In setting the amount of a parent's child support obligation, the court may impute the payor's income if her present income is uncertain. *In re Marriage of Gosney*, 394 Ill.App.3d 1073, 1077 (3d Dist. 2009) (citing *In re Marriage of Sweet*, 316 Ill.App.3d 101, 107 (2d Dist. 2000)). The test to determine whether it is proper for the court to impute the payor's income involves a finding of the presence of one of the following factors: "(1) the payor is voluntarily unemployed; (2) the payor is attempting to evade a support obligation; or (3) the payor has unreasonably failed to take advantage of an employment opportunity." *Id.* at 1077 (internal citations removed). If none of these factors are present, the court may not impute income to the noncustodial parent. *Id.* The court's determination of income is reviewed under an abuse of discretion standard. *In re Marriage of Rogers*, 213 Ill.2d 129, 289 (2004); *see also In re Marriage of Pasquesi*, 2015 IL App (1st) 133926, ¶ 29 ("The findings of the trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion.") (internal citations removed). We will not disturb the circuit court's findings unless no reasonable person would agree with the position adopted by the court. *In re Marriage of Pasquesi*, 2015 IL App (1st) 133926 at ¶ 29.

¶ 39    Kelly argues that the circuit court was not only wrong in deciding on the amount of income it imputed to her, but in imputing any income at all. She claims that the question of whether she was able to hold any employment whatsoever was conclusively answered in the negative by the fact that the SSA approved her application for SSDI on the basis of her disability of PTSD. At trial, she presented a letter from the SSA stating that it found her to be disabled as of March 1, 2019, and that she was eligible for monthly disability benefits of $1,064.00 for the year of 2022.

¶ 40    The circuit court stated in the Allocation Order that the evidence Kelly presented at trial did not establish her disability, and that her testimony regarding her inability to work was not credible. Kelly states that, prior to her second pregnancy in 2019, she worked as a nanny but is now disabled and unable to do any work; in its Judgment for Dissolution of Marriage, the court questioned how she claimed to be able to carry out all of the necessary parental responsibilities for her child if she was unable to perform the functions of a nanny. Over the course of trial, the circuit court heard testimony and reviewed evidence, including bank statements, that Kelly had received various deposits of money into her account, which Kelly did not list on her financial affidavit as income. Kelly claims, both at trial and on appeal, that these did not constitute income, and constituted money that she was holding for various fundraising causes, and that she was collecting this money in her role as a community builder and mutual aid organizer. The court was also presented with evidence that Kelly was a social media influencer, and did not find her credible when she claimed to have earned very little money for herself compared to the evidence showing deposits to and withdrawals from her bank account.

¶ 41    We find that the circuit court's decision to impute an income for Kelly was not unreasonable, and that although the court did not explicitly state the test for imputing income, it is clear from its post-trial rulings that, having reviewed the evidence, heard testimony from the

parties and the GAL, and assessed the credibility of the parties and GAL, the court had reason to believe that Kelly was not being truthful in disclosing all information about her income and her ability to work. Despite receiving SSDI, she was working in some capacity, whether it was as an influencer or a mutual aid organizer, and was receiving some amount of income for that work. Furthermore, even if Kelly was not conventionally employed and earning a salary, "income" for the purpose of determining child support pursuant to the Act includes a variety of payments that would not be taxed as income under the Internal Revenue Code. *See, for example, In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 38 ("[I]ncome includes 'gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children,' which are 'normally linked to employment or self-employment, investments, royalties, and gifts.'") (quoting *Mayfield v. Mayfield*, 2013 IL 114655, ¶ 16). The circuit court was presented with evidence of various payments that Kelly received but did not report as income; it therefore had a basis to impute her income where she was not forthcoming with her earnings.

¶ 42     The court picked $71,000 as her imputed income based on the amount of money that went into her bank account the year prior, and evidence that she had continued to receive deposits in her account the year of trial. Contrary to her arguments, this is not an inappropriate estimate of current earnings based on past earnings, nor is it an indication that the court ignored her testimony of being disabled for employment purposes. Even if she did not expect to receive the same payments in the same amounts in the future, it is proper for the court to consider nonrecurring income in its child support determinations. *In re Marriage of Rogers*, 213 Ill.2d at 138-39. We further find that the court based its imputation of income on the evidence and testimony presented, and not on any inappropriate basis such as mere speculation. *See In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶¶ 46-47 ("In determining a party's earning capacity, a court should only consider

evidence presented, not mere speculation *** When calculating the amount of income to impute, the trial court may consider the supporting parent's income from previous employment.")

¶ 43                    IV. May 25, 2022 Award of Attorney's Fees

¶ 44                              *a. Standard of Review*

¶ 45    We review the circuit court's award of attorneys' fees pursuant to an abuse of discretion standard. *DeLapaz v. SelectBuild Construction, Inc.*, 394 Ill.App.3d 969, 972 (1st Dist. 2009). The court abuses its discretion if "no reasonable person would take the view adopted by the trial court." *Id.* (quoting *In re Marriage of Heroy*, 385 Ill.App.3d 640, 651 (1st Dist. 2008)). The party seeking attorney fees bears the burden of presenting sufficient evidence to establish that the requested fees are reasonable. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2014 IL App (1st) 130962, ¶ 28. In determining the reasonable value of attorney fees, a court should consider "the skill and standing of the attorney, the nature of the cause, novelty and difficulty of the questions at issue, importance of the subject matter, degree of responsibility involved in managing the case, time and labor required, customary charges in the community, benefits resulting to the client, and the connection between the amount of fees sought and the amount of money involved in the litigation." *Id.*

¶ 46              *b. Whether the Court Erred in Awarding Attorney's Fees*

¶ 47    Kelly challenges the May 25, 2022 order awarding Jacob attorney's fees in the amount of $8,982 pursuant to 750 ILCS 5/508(b) for Kelly's violation of two court orders.[7] She argues that there was insufficient basis to sanction her where the court had made a finding of contempt in one

---

[7] In his March 23, 2022 Motion to Reconsider and Clarify February 22, 2022 Judgment, Jacob cites to the court's finding in its December 16, 2020 order stating that Kelly violated an August 13, 2020 order not to discuss any aspect of the litigation with her child or to discuss the litigation on social media, and a December 15, 2021 order finding a *prima facie* showing of indirect civil contempt and issuing a rule to show cause against Kelly for failure to pay discovery sanctions of $14,000.

of the two instances, and in the other order at issue, the court merely stated that she had violated a prior order. She further argues that the court erred in awarding Jacob attorney's fees in the amount requested where he failed to provide support for the fee amount, neither with an itemization nor any other evidence of reasonableness.

¶ 48     Section 508(b) states, in relevant part, "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2020). Pursuant to Section 508(b), the circuit court has no discretion as to whether to award attorney's fees, only whether the failure to pay was without cause or justification. *In re Marriage of Goldberg*, 282 Ill.App.3d 997, 1003 (1st Dist. 1996).

¶ 49     Kelly does not cite to any authority that states that it is improper for a court to sanction a party for violating a court order where the court did not make a contempt ruling, or that there is a minimum severity of the violation that the court must first find before it may award the opposing side attorney's fees pursuant to Section 508(b). *See In re Marriage of Davis*, 292 Ill.App.3d 802, 811 (4th Dist. 1997) ("A finding of contempt is sufficient to support a mandatory award of attorney fees but is not necessary."); *see also In re Marriage of Patel and Sines-Patel*, 2013 IL App (1st) 112571, ¶ 124 ("Nothing in section 508(b) requires a finding that the violations [of the court's orders] were intentional.")  Kelly does not deny that the court found that she had violated its orders on the two occasions cited in Jacob's motion, including one finding of contempt, and she does not challenge those findings on appeal. We are not presented with any basis for reversing the court's ruling that an award of attorney's fees to Jacob was proper in both instances.

¶ 50     *c. Whether the Court Erred in the Amount of the Fee Award*

¶ 51     Kelly separately argues that the circuit court improperly accepted the full amount of attorney's fees requested in Jacob's motion when the motion did not include any proof of the reasonableness of those fees, simply stating that he had incurred "roughly $5,000 for the first finding of contempt[8] and $3,982 for the second finding of contempt." On February 2, 2022, Jacob filed a Petition for Attorney's Fees Pursuant to 750 ILCS 5/508(b), seeking $3,982 in fees relating to Kelly's violation of the court's June 3, 2021 order requiring her to pay discovery sanctions of $14,000. The court entered an Order on Rule to Show Cause for failure to pay the discovery sanction on December 15, 2021, making a finding of indirect civil contempt. Jacob's fee petition included billing records establishing the time spent and fees incurred pertaining to the contempt ruling. Jacob's March 23, 2023 motion to reconsider refers to this prior fee petition, and while he does not attach the billing records to his later motion, we find that he sufficiently presented evidence supporting the reasonableness of fees sought for Kelly's second referenced violation of the court's orders.

¶ 52     Regarding the first violation, on December 8, 2020, Jacob filed a Petition for Rule to Show Cause regarding Kelly's violation of that order by posting about the litigation on social media, and her continued refusal to respond to discovery requests regarding all of her relevant social media posts or to 201(k) letters sent by Jacob's counsel. Jacob sought attorney's fees and costs pursuant to Section 508(b) for Kelly's violation of this order, although he did not include the amount of fees incurred due to her noncompliance. In a December 11, 2020 motion *in limine*, Jacob raised further evidence of Kelly's violation of the August order, and requested $7,500 in attorney's fees. The

---

[8] The referenced finding was not a finding of contempt; rather, the court made a finding in its December 16, 2020 order ruling on Jacob's Emergency Petition 2 that Kelly had violated the August 13, 2020 order not to discuss any aspect of the litigation with her child. However, this error is not material to our decision.

court's December 16, 2020 order does not mention the amount or reasonableness of fees sought, but allowed Kelly time to respond to the Petition for Rule to Show Cause. Kelly then filed a motion to dismiss the Petition. The parties continued to litigate the issue of Kelly's failure to respond to discovery. On March 19, 2021, the court entered an order finding that Kelly had not fully complied with discovery requests, including requests to disclose metadata relating to her social media posts. It is unclear from the record what became of the matter of Kelly's improper social media posts, but the failure to respond to discovery requests eventually resulted in the court's sanctioning Kelly in the amount of $14,000, which is the basis for Jacob's request of $3,982 in attorney's fees, mentioned above.

¶ 53    On December 16, 2021, Jacob filed his Fourth Petition for Rule to Show Cause, which again addressed Kelly's violation of the August 13, 2020 order, specifically the provisions enjoining the parties from posting online about the litigation, discussing the litigation with their child, and disparaging each other in the child's presence. He requested attorney's fees incurred in bringing this and prior petitions relating to this issue, without specifying an amount or including any attachments demonstrating the amount of fees sought. The court scheduled a hearing on Jacob's petition, and Kelly subsequently filed a motion to dismiss. Lacking a transcript, we do not know whether the matter of Jacob's attorney's fees was addressed at this hearing; the court entered an order allowing for Jacob to respond to Kelly's motion to dismiss and continued the matter to February 22, 2022.

¶ 54    Jacob next filed a February 1, 2022 Petition for Attorney's Fees Pursuant to 750 ILCS 5/508(b) in the amount of $3,982 relating to Kelly's failure to pay $14,000 in discovery sanctions. This included an attached itemization of time and fees. He first identifies "roughly $5,000" as the reasonable attorney's fees incurred regarding Kelly's first violation in his Motion to Reconsider,

which led to the May 25, 2022 order which Kelly challenges. We do not know whether the court addressed the basis for the $5,000 amount at the hearing on Jacob's motion, only that the court accepted it as reasonable in its order.

¶ 55    In both of Jacob's references to court orders that Kelly violated, for which he has adequately demonstrated a basis for reasonable attorney's fees pursuant to Section 508(b), the primary fees generated by his attorneys resulted from the preparation of, filing of, and hearings on petitions for rules to show cause, as well as attempts to obtain responses to discovery from Kelly. The court reviewed the itemized billing records for fees sought stemming from Kelly's violation of a June 3, 2021 order to pay discovery sanctions, considered the rates charged, time spent, and activities billed, and found $3,982 to be a reasonable amount. Jacob had the same counsel during the time covering both instances of Kelly's sanctionable conduct, and the record shows that he filed three petitions for rules to show cause relating to violation of the August 13, 2020 order, that he filed a response to Kelly's motion to dismiss the latest of those petitions, and that there were at least two court hearings that addressed Kelly's violation of the August 13, 2020 order. Considering that this order was entered almost a year prior to the order forming the basis for the second sanctionable behavior, we find that it was not unreasonable for the circuit court to approve fees of $5,000 for the first violation where it had approved fees of approximately $1,000 less for the second violation.

¶ 56    While we do not overlook the importance of a party seeking an award of attorney's fees to show a reasonable basis for those fees, without full information of whether the court heard any testimony from Jacob's counsel on the fees incurred, we will defer to the circuit court's discretion in awarding a total of $8,982 in its May 25, 2022 order. *See Foutch v. O'Bryant*, 99 Ill.2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved

against the appellant"); *Larsen v. D. Construction, Inc.*, 2021 IL App (1st) 191999, ¶ 31 (Where the transcript of the hearing at which the trial court issued its decision awarding attorney's fees was not available for review, we must assume that the trial court's termination "was in conformity with law and had a sufficient factual basis"); *In re Marriage of Chesrow*, 255 Ill.App.3d 613, 623 (2d Dist. 1994) (stating the same). The circuit court was familiar with the entirety of divorce proceedings, including the work of Jacob's counsel in seeking rules to show cause for Kelly's continued posting online about the litigation, and the court had a basis from Jacob's petition for attorney's fees pertaining to the second violation to determine that the fees sought for the first violation were reasonable. We therefore affirm the circuit court's May 25, 2022 award of attorney's fees pursuant to Section 508(b).

¶ 57                                    CONCLUSION

¶ 58    For the foregoing reasons, the judgment of the Circuit Court of Cook County in favor of Jacob Knabb and against Kelly Knabb is affirmed.

¶ 59    Affirmed.